UNITED STATES of America, Plaintiff–Appellee,

v.

Norman Russell BAKER, Jr., Defendant–Appellant.

No. 87–3058.

United States Court of Appeals, Ninth Circuit.

Argued March 8, 1988.

Submitted May 2, 1988.

Decided July 5, 1988.

As Amended Sept. 7, 1988.

Mark D. Blackman, Ransom, Blackman & Simson, Portland, Or., for defendant-appellant.

Baron H. Sheldahl, Asst. U.S. Atty., Portland, Or., for plaintiff-appellant.

Before GOODWIN, SKOPIL, and NELSON, Circuit Judges.

GOODWIN, Circuit Judge:

Norman Russell Baker, Jr. appeals his conviction and subsequent sentence to 15 years imprisonment as an armed career

criminal under 18 U.S.C.App. § 1202(a).[1] We affirm.

On October 27, 1986, while on duty, Sgt. Klier of the Clackamas County Sheriff's Office observed a 1972 Chevrolet which lacked a hood, had a high-rise manifold, two four-barrel carburetors and an air scoop. Klier began following, and then stopped the vehicle. Klier's expressed basis for the stop was that the car's exhaust was "excessively and unreasonably loud."

Baker got out of the car. When asked for his license, Baker said he did not have it with him. When asked his name, Baker said something quickly which Klier did not understand. Klier saw something that looked like part of a knife sheath visible under Baker's coat. Klier reached in and grabbed it. It was a hunting knife. Klier then saw Baker remove his right hand from his jacket pocket and then quickly move his hand inside the jacket. Sgt. Klier saw what appeared to be a knife handle in Baker's hand. Klier grabbed it; it was a switchblade. Klier then arrested Baker and handcuffed him. A pat down search for more weapons revealed two loaded 16 round, .45 caliber magazines for an Uzi-type weapon in Baker's coat pocket.

Sgt. Klier requested registration information from headquarters, but the computer was down. Klier then entered Baker's vehicle to search for the vehicle's registration and to obtain the Vehicle Identification Number ("VIN"). He observed a syringe, another knife, a black tube which appeared to be a silencer, and the butt of a handgun.

He then secured the vehicle, had it towed, obtained a state court search warrant and conducted a thorough search that afternoon. During the search he found a loaded Uzi semi-automatic rifle, an unregistered silencer, a loaded 7.62 MM Mauser pistol and a .357 Ruger revolver.

Two days later a federal search warrant was obtained for the defendant's residence. The agents seized two additional rifles and several spent .45 caliber shell casings from the property surrounding the defendant's dwelling.

Baker was arrested on a federal charge of being an ex-convict in possession of firearms. The grand jury returned a two-count indictment charging the defendant with being an armed career criminal in violation of section 1202(a), and possession of an unregistered silencer in violation of 26 U.S.C. § 5861(d) (1982). In Count 1 the indictment alleged that Baker had four prior felony convictions for burglary and robbery.

The court denied all of Baker's pretrial motions except his motion to bifurcate the trial. The jury was first required to decide whether Baker possessed the firearms as charged. If the jury found that he possessed the firearms, then evidence of the four prior felony convictions would be admitted. The bifurcation was an attempt to avoid the prejudicial effect which the prior convictions might have on the jury.

Baker's theory of defense was that he did not know that the firearms were in the car. The thrust of his argument was that after the firearms were purchased on July 5, 1986, he received information from his probation officer which prompted him to instruct his girlfriend to get rid of the rifle. Baker sought to prove that he thought his girlfriend had gotten rid of the weapons by October 27, 1986.

Baker testified on his own behalf. On cross-examination the prosecution elicited an admission that Baker was present on July 5 when his girlfriend purchased the Uzi, that Baker fired the weapon on that day in his back yard, and that Baker knew it was wrong to purchase or fire the weapon.

After jury deliberations had begun, the court discovered that the bailiff had erroneously given the indictment to the jury. The indictment recited the four alleged prior convictions, thus nullifying the attempt to avoid prejudicing Baker by bifurcating the trial. The court granted Baker's motion for mistrial and scheduled retrial for the next week.

Before the start of the new trial, however, the government obtained a supersed-

---

**1.** On November 15, 1986, this section was repealed and the sentence enhancement provision of the Armed Career Criminal Act was recodi-

fied at 18 U.S.C. §§ 922(g) and 924(c)(1) (1982 & Supp. IV 1986).

ing indictment which added a second Armed Career Criminal Act count (Count 2) for possession of the Uzi on July 5, 1986. The superseding indictment was based on Baker's trial testimony. The court denied Baker's motion to dismiss the superseding indictment. Thereafter, Baker waived trial by jury. The prosecutor introduced Baker's previous trial testimony, and Baker was convicted on Count 2.

The court then scheduled a separate hearing to determine the validity of the four prior convictions. The court determined that three of the four prior state convictions for burglary and robbery were valid and found that Baker was an armed career criminal.

On May 18, 1987, the court sentenced Baker to serve the minimum mandatory 15–year term of imprisonment required under the enhanced sentencing provisions of § 1202(a).

## I. *Suppression Motion*

■ Baker challenges the denial of his motion to suppress the evidence seized from his person and his vehicle, arguing that the officers had no probable cause to stop his vehicle. The trial court found that the initial stop of Baker's car was supported by probable cause under both state and federal law. We need not review the state law question.[2] Moreover, the search of Baker's car following his arrest was lawful.

■ Baker argues that his arrest was pretextual. Baker points out that the police followed him for several minutes before stopping him. This, Baker argues,

suggests that the police were hoping he would violate some traffic law, and when he did not speed or run a stop sign, they relied on the noise statute, the violation of which is humanly impossible to determine.[3] He claims that the police were suspicious of him because of his apparent caution.

In *United States v. Fouche,* 776 F.2d 1398 (9th Cir.1985), however, this court upheld a traffic stop near the scene of a bank robbery. Fouche argued that the traffic stop was a pretext to investigate the bank robbery. This court held that Fouche's argument implicated the credibility of the officer. The officer had been found credible by the trial court, and that decision could not be overturned unless clearly erroneous. *Id.* at 1402 & n. 3. Similarly, the trial court in this case must have credited Klier's testimony. That decision was not clearly erroneous. Moreover, Baker, unlike Fouche, offers no reason why the officers would be interested in stopping him aside from the traffic infraction. For the same reason, Baker's reliance on *United States v. Causey,* 818 F.2d 354 (5th Cir. 1987), *rev'd,* 834 F.2d 1179 (5th Cir.1987) (*en banc*), is misplaced.

*Fouche* also undermines Baker's argument that Sgt. Klier lacked founded suspicion to stop his car. As the court in *Fouche* recognized, traffic violations constitute criminal conduct which is sufficient to support a brief investigatory stop. *Id.* at 1403, citing *Delaware v. Prouse,* 440 U.S. 648, 661, 99 S.Ct. 1391, 1400, 59 L.Ed. 2d 660 (1979). Baker argues that Klier lacked an objective basis for believing that Baker had committed the traffic infraction

**2.** In his brief, Baker argued that state law governs the stop of his vehicle because the stop was made by local officials independent of federal authorities. *See United States v. Henderson,* 721 F.2d 662, 664–65 (9th Cir.1983) (dicta suggesting that such evidence should not be admissible in federal court), *cert. denied,* 467 U.S. 1218, 104 S.Ct. 2665, 81 L.Ed.2d 370 (1984). In a recent case decided after the briefs were filed, however, this court held that federal law governs in such cases. *United States v. Chavez–Vernaza,* 844 F.2d 1368, as amended (9th Cir.1987).

**3.** During the preliminary proceedings, the government relied on § 815.250 of the Oregon Traffic Code, which sets out the discrete noise levels permitted for a proper exhaust system, as justification for the initial stop of Baker's car. *See* Or.Rev.Stat. § 815.250(c)(III) (92 decibels at 25 feet for car manufactured before 1976). However, at the hearing, the government, argued that Sgt. Klier based his stop on § 815.025 as well as § 815.250. Section 815.025, in contrast with section 815.250, prohibits making unreasonable noise—noise not necessary to proper operation of the vehicle. Or.Rev.Stat. § 815.025.

The trial court did not decide on which section Sgt. Klier had based his stop. However, the court found Klier credible. We need not address this issue, because our holding would be the same no matter which statute Klier contemplated.

for which he was stopped, because Klier lacked the ability to determine the car's decibel level. Nonetheless, Klier had the ability reasonably to suspect that the car violated noise ordinances, whether or not the car actually did so. The car's "souped-up" reconfiguration—the lack of a hood, the high rise manifold and the two four barrel carburetors—support this suspicion. Under federal law, the evidence of excessive noise is sufficient to create a well-founded suspicion to stop and investigate the car.

Baker further argues that even if the officer's stop of Baker's car was justified, Sgt. Klier was not authorized to enter Baker's car. This claim also lacks merit.

█ Sgt. Klier arrested Baker for failure to carry a valid license, and for carrying a concealed switchblade. The search of Baker's person incident to his arrest was lawful. *United States v. Robinson*, 414 U.S. 218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973).

█ The Supreme Court has also recognized that there is no reasonable expectation of privacy in a VIN. *New York v. Class*, 475 U.S. 106, 111–12, 106 S.Ct. 960, 964–65, 89 L.Ed.2d 81 (1986). Moreover, having found rounds of .45 caliber ammunition on the defendant's person, and two magazines for an Uzi rifle, the officer had probable cause to believe that firearms were in the vehicle. Probable cause allows officers to search an automobile. *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

Thus, the warrantless search of the vehicle was also lawful.

## II. *Superseding Indictment*

Baker moved to dismiss the superseding indictment which added a charge for possession of the Uzi on July 5 based on Baker's testimony at the first trial. Baker argued that the superseding indictment violated both double jeopardy and the privilege against self-incrimination.

█ Baker contends that the government's theory at trial was that Baker exercised dominion and control over the Uzi

from July 5, 1986 to October 27, 1986. The government's theory, Baker argues, consisted of trying to prove a course of conduct of possession, not a series of discrete acts. This theory, Baker asserts, precludes multiple prosecutions and punishments.

In *United States v. Jones*, 533 F.2d 1387 (6th Cir.1976), *cert. denied*, 431 U.S. 964, 97 S.Ct. 2919, 53 L.Ed.2d 1059 (1977), the Sixth Circuit held that Congress intended § 1202(a) to punish a course of conduct, not a series of discrete acts. *Id.* at 1391. Thus, relying on the venerable authority of *Crepps v. Durden*, 98 Eng.Rep. 1283, 1287, 2 Cowper 640 (K.B.1777) and *In re Snow*, 120 U.S. 274, 281–82, 7 S.Ct. 556, 559, 30 L.Ed. 658 (1887), the court dismissed two of the defendant's three convictions for possession of the same revolver. *Id.* at 1390–92. *See also United States v. Kimberlin*, 781 F.2d 1247, 1254 (7th Cir.1985) (five-day period of possession of a Department of Defense patch was one offense, thus multiple convictions violated double jeopardy), *cert. denied*, —— U.S. ——, 107 S.Ct. 419, 93 L.Ed.2d 370 (1986).

The trial court in this case distinguished the reasoning in *Snow* and *Crepps* on the basis that the defendant's testimony indicated a break in possession.[4] *United States v. Baker*, 655 F.Supp. 1040, 1041–42 (D.Or.1987). Baker contends that the trial court erroneously focused on the current state of the evidence, rather than the state of the evidence prior to the start of the first trial when the government chose between alleging either single or multiple possessions. *See Jones*, 533 F.2d at 1391 ("[t]he return of an indictment charging a course of conduct prevents the relitigation of any course of conduct charged in the indictment which is tried or dismissed with prejudice and which occurred prior to the return of the indictment").

The government, however, simply did not have enough evidence prior to trial to charge Baker with possession of the Uzi on July 5. The government knew that Baker was present when someone purchased the Uzi on July 5. However, presence is not normally sufficient to convict. The govern-

4. The defendant admitted possession on July 5, but denied possession on October 27.

ment also knew that .45 caliber cartridges were found at the defendant's residence, but had no ability to determine who had fired them or when they had been fired. One witness also testified that he saw the defendant with a rifle sometime after August (not July) 1986. This evidence was not enough to prosecute Baker for possession for July 5. Thus, the government could not have made the choice between a course of conduct and multiple possessions which the cited language in *Jones* presupposes.

Baker's reliance on *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), is also misplaced. *Ashe* involved the prosecution of a defendant for robbing one of the participants in a poker game, after a jury had acquitted him of robbing one of the other participants in the game. *Id.* at 437–39, 90 S.Ct. at 1190–91. The Court held that this reprosecution violated the defendant's right against double jeopardy. *Id.* at 445, 90 S.Ct. at 1195. In this case, however, jeopardy had not terminated, because the mistrial prevented a jury verdict in the first trial. In the second trial, the jury was waived and all counts other than Count 2 were dismissed. Thus, *Ashe* is inapposite.[5]

■ Baker also argues that basing a new charge, even in part, on the defendant's testimony at trial on the original indictment violates the defendant's privilege against self-incrimination and his right to counsel. The trial court rejected Baker's self-incrimination argument, reasoning that encouraging a defendant to immunize oneself from other criminal conduct by testifying at a trial was never the intent of the fifth amendment. *Baker,* 655 F.Supp. at 1042–43.

The general rule is "that a defendant's testimony at a former trial is admissible against him in a later proceeding." *Harrison v. United States,* 392 U.S. 219, 222, 88 S.Ct. 2008, 2010, 20 L.Ed.2d 1047 (1968). Baker argues, however, that the trial court failed to analyze the protection recognized

by the Supreme Court of the decisionmaking process by which a defendant determines whether or not to testify. Baker notes that in *Harrison,* the Court recognized an exception to the general rule; when the prosecution introduces an inadmissible confession at trial and thereby compels the defendant to testify in rebuttal, use of the defendant's testimony at a later proceeding is barred. *Id. See also Simmons v. United States,* 390 U.S. 377, 389–93, 88 S.Ct. 967, 973–76, 19 L.Ed.2d 1247 (1968) (holding that testimony given out of the presence of the jury in support of a pretrial constitutional claim cannot be used at trial); *Brooks v. Tennessee,* 406 U.S. 605, 607–12, 92 S.Ct. 1891, 1892–95, 32 L.Ed.2d 358 (1972) (holding unconstitutional a statute which required a defendant to testify as her first witness or not at all). Baker analogizes from *Harrison, Simmons* and *Brooks* to argue that permitting the government to obtain a superseding indictment based on a defendant's testimony in a trial which ends in a mistrial, similarly impinges on the defense's ability to make an informed and advised decision on whether to testify or assert the privilege against self-incrimination. The focus, Baker argues, should be on preventing the government from burdening the privilege against self-incrimination by making the tactical decision to testify more "costly." *See Griffin v. California,* 380 U.S. 609, 614, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965).

There are, however, many burdens on a defendant's decision to testify which do not offend the constitution. The decision to testify always involves the threat of a subsequent prosecution for perjury, if the defendant lies on the stand. Similarly, we do not think that a defendant can expect to admit with impunity a crime for which he or she is liable. We decline to extend the principle urged by Baker this far.

---

5. Baker relies on *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), for the proposition that jeopardy attaches when the first juror is sworn in. *Downum* is inapposite, however, because the prosecution in that case, not the defendant, had moved for a mis-

trial. A mistrial declared at the request of the defendant ordinarily removes any barriers to reprosecution even if it was made necessary by prosecutorial or judicial error. *United States v. Dinitz,* 424 U.S. 600, 607–10, 96 S.Ct. 1075, 1079–81, 47 L.Ed.2d 267 (1976).

## III. The Use of Baker's June 4, 1979 Robbery Conviction in Enhancing His Sentence

After conviction, the government sought to sentence Baker under the Armed Career Criminal Act which enhances sentences for three-time felons convicted of weapon charges. Because Baker's convictions occurred before the Supreme Court's decision in *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), they may be attacked collaterally. *See United States v. Engesser*, 788 F.2d 1401, 1404 (9th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 233, 93 L.Ed.2d 159 (1986). The government conceded that one of the four convictions was invalid.

Baker now contests the trial court's decision that the June 4, 1979 robbery conviction was valid on the grounds that he was denied effective assistance of counsel, and that the prosecutor's knowing use of perjured testimony violated his due process rights. A trial court's decision that a prior conviction is valid or that a defendant was denied effective assistance of counsel, are mixed questions of law and fact which this court reviews *de novo*. *United States v. Austin*, 817 F.2d 1352, 1354 (9th Cir.1987).

### A. Ineffective Assistance of Counsel.

■ The trial court accepted Baker's showing that the attorney who represented him for the June 4, 1979 Benton County robbery conviction was incompetent. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As the trial court noted, defendant's counsel had served his client well in some respects. However, counsel made "errors of omission and commission," some of which were probably substandard performance.

However, under *Strickland*, the defendant must show that there is a reasonable probability that the result of the trial would have been different had counsel been free of error. 466 U.S. at 694, 104 S.Ct. at 2068. As the trial court found, the government had a strong case. A gun identical to the one used in the robbery had been found in Lee's house where Baker had lived and frequently visited. Both eye-witnesses positively and strongly identified Baker, both in court and from a color photograph. Although one of those witnesses could not identify Baker from a black and white photograph, that photograph was old and looked different from the color photograph. Finally, Hanson testified that Baker admitted the crime to him; and the details of Hanson's testimony substantially corroborated the testimony of the other witnesses.

Given the strong case, we agree with the trial court that even the most skilled attorney making all the right objections and motions could not have caused a jury to find a reasonable doubt as to the defendant's guilt.

### B. Use of perjured testimony and due process.

■ Baker also contends that he was denied due process because the prosecutor knowingly used perjured testimony and then argued from the perjured testimony in closing arguments. Baker contends that the record shows that Hanson told the police that both he and Lee participated in planning the robbery. Yet, both testified that they were not involved. Further, Baker argues that the record shows that the district attorney knew that the testimony of each witness contradicted statements in the police reports, that the prosecutor vouched for the informant's truthfulness and argued each man's denial of involvement to the jury as evidence of Baker's guilt.

Intentional use of perjured testimony invalidates a defendant's conviction. *See Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). However, the record here at most shows only a prior inconsistent statement by Hanson. When he called the prosecutor as a witness in the collateral proceeding, Baker failed to ask the state prosecutor any questions regarding the use of perjured testimony. We cannot presume that the prosecutor knew that the prior statement was true, but used it anyway. Given Baker's failure to pro-

duce any evidence of knowing use of perjured testimony, we must reject his argument.

## IV.  *The Constitutionality of the Armed Career Criminal Act*

Prior to trial Baker moved to dismiss the armed career criminal charges as unconstitutional on equal protection, due process and disproportionality grounds, and as a violation of the separation of powers. The trial court denied the motion.

### A.  *Equal protection.*

■ The Armed Career Criminal Act of 1984 amended 18 U.S.C.App. § 1202(a)(1) to provide mandatory and enhanced penalties for a narrow category of persons, namely those having "three previous convictions by any court ... for robbery or burglary, or both ...". Baker challenges this classification on equal protection grounds, arguing that it irrationally targets three-time burglars and robbers as opposed to other three time felons who commit dangerous crimes. However, this court recently held that it was within Congress' power to make this distinction. *United States v. Clawson,* 831 F.2d 909, 915 (9th Cir.1987); *see also United States v. Hawkins,* 811 F.2d 210, 216–17 (3d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987).

### B.  *Disproportionate punishment under the eighth amendment.*

■ Baker argues that the mandatory minimum sentence of 15 years violates the eighth amendment because it is disproportionate to the underlying crime. *See Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (mandatory life sentence without parole, for defendant convicted of seven nonviolent felonies held invalid). However, sentence enhancement for dangerous offenders or for firearms offenses has been held not to violate the eighth amendment. *See McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (5-year minimum sentence for use of firearm upheld); *United States v. Soto,* 779 F.2d 558, 563 (9th Cir. 1986) (sentence enhancement for special dangerous offenders upheld), *amended,* 793 F.2d 217 (1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 110, 98 L.Ed.2d 70 (1987). Moreover, a life sentence imposed upon a person convicted of three nonviolent felonies, has been upheld when that person was eligible for parole in twelve years. *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).

The mandatory 15-year minimum sentence for dangerous felons in this case is more like the statute in *Rummel* than the one in *Solem.* Thus, we hold that the 15-year term does not violate the eighth amendment.

### C.  *Separation of powers.*

■ Finally, Baker argues that the mandatory minimum sentencing requirement is a legislative infringement of the judicial branch in violation of the doctrine of separation of powers. Baker's argument is based on broad statements about the separations of powers and checks and balances, *see Bowsher v. Synar,* 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986), and a tenuous analogy between mandatory minimum sentences and death penalty cases. *See Eddings v. Oklahoma,* 455 U.S. 104, 112, 102 S.Ct. 869, 875, 71 L.Ed.2d 1 (1982), quoting *Pennsylvania v. Ashe,* 302 U.S. 51, 55, 58 S.Ct. 59, 61, 82 L.Ed. 43 (1937) (observing that in death penalty cases, "justice ... requires ... that there be taken into account the circumstances of the offense together with the character and propensities of the offender").

The Supreme Court, however, simply has not applied the strict requirement for death penalty cases that the sentencing body retain discretion, to mandatory minimum prison sentences. Nor has the Court applied the broad principles of checks and balances to invalidate mandatory minimum prison sentences. Baker offers no compelling reasons to extend the reasoning in *Bowsher* or *Eddings* to mandatory mini-

mum prison sentences. We decline to do so.

AFFIRMED.