967 F.2d 592
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kenneth Edward BOWERS, Defendant-Appellant.
 No. 91-50075.
 United States Court of Appeals, Ninth Circuit.
 Argued May 7, 1992.
Submitted June 9, 1992.
Decided June 11, 1992.
 
 Before ALARCON, WILLIAM A. NORRIS and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Kenneth Bowers appeals the district court's denial of his motion to suppress evidence and his conviction on various drug related counts.
 
 
 3
 * At approximately 9 p.m. on December 5, 1989, a 1973 Chevrolet Impala driven by appellant Kenneth Bowers was stopped at the permanent immigration checkpoint in Temecula, California. The vehicle also contained Melody Davis and co-defendants Robert Bressette and Joelene Betonio. The Border Patrol agent at primary inspection, Thomas Karabanoff, referred the vehicle to secondary inspection because the occupants appeared nervous and the car was riding low in the rear. Agent Michael Tangas met the vehicle at secondary inspection. All four occupants told Agent Tangas they were U.S. citizens. Bowers stated that he owned the car. Agent Tangas obtained Bowers' consent to look in the trunk of the car, where he observed neither aliens nor contraband. Agent Tangas then asked Bowers for his drivers license and noticed that his hand was visibly shaking. Agent Tangas asked for and obtained Bowers' consent to search the vehicle's interior, inside which he found a taped box. Agent Tangas asked to whom the box belonged and when no one claimed ownership, he asked for and obtained Bowers' consent to open the box. Inside, he found a bible and a foil wrapped package containing marijuana.
 
 
 4
 Without placing the four under formal arrest, Agent Tangas took them to a holding area for further questioning and a strip-search. During the strip-search the agents recovered from Bowers a ledger and a small package containing approximately .24 grams of methamphetamine. Agent Karabanoff, meanwhile, left his primary inspection station and searched the car's trunk. He opened a newspaper-wrapped package and found a plastic bag containing white powder. Agent Karabanoff also found a white box, which he and Agent Tangas opened, revealing a second plastic bag that also contained white powder. The bags were later determined to contain a total of 258 grams of methamphetamine of a grade different from the methamphetamine recovered from Bowers.
 
 
 5
 The grand jury returned a two count superseding indictment against Bowers, Bressette, and Betonio. Count one charged defendants with conspiring to possess, with intent to distribute, approximately 371.1 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1). Count two charged defendants with possessing, with intent to distribute, approximately 371.1 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and with aiding and abetting commission of the substantive offense in violation of 18 U.S.C. § 2. The jury found Bowers guilty on both counts and he was sentenced to 120 months in custody and five years of supervised release. This appeal followed.
 
 II
 
 6
 Bowers contends that the government violated his Fourth Amendment rights by detaining him at a permanent immigration checkpoint to investigate for drugs without a reasonable suspicion of criminal activity. It is undisputed that the initial stop at the permanent checkpoint was permissible under the Fourth Amendment. United States v. Martinez-Fuerte, 428 U.S. 543, 563 (1976). Moreover, no particularized reason need exist to justify referral to secondary inspection. Id. at 563. At secondary inspection, Bowers consented to a search of his trunk.
 
 
 7
 Bowers first argues that he should not have been detained further after the search of his trunk. However, we have held that brief further detention at an immigration checkpoint for reasons unrelated to immigration may be supported by "minimal, articulable suspicion." United States v. Taylor, 934 F.2d 218, 221 (9th Cir.1991), cert. denied, 112 S.Ct. 971 (1992). Agent Tangas' observation that Bowers was nervous satisfies this standard. See id. Shortly after Agent Tangas' initial search of the trunk, Bowers consented to a search of the car's interior. He further consented to a search of the taped box found inside the car. When a defendant voluntarily consents to a search while he is being detained lawfully, the products of the search are admissible against him. United States v. Morales, No. 91-50513, slip op. at 4165 (9th Cir. Apr. 17, 1992) (citing Florida v. Royer, 460 U.S. 491, 502 (1983). Once Agent Tangas had discovered marijuana inside the taped box, he had probable cause to detain and search the defendants further.
 
 
 8
 The border patrol agents also had probable cause to search Bowers' trunk for narcotics. In United States v. Baker, 850 F.2d 1365, 1369 (9th Cir.1988), we held that discovery of ammunition on a defendant's person gave a sheriff's officer probable cause to believe that defendant's vehicle contained firearms. Discovery of marijuana in a box in Bowers' car similarly gave the agents in this case probable cause to search the car for narcotics. Since narcotics could be contained in the trunk as well as in the passenger compartment, the agents were entitled to search the trunk. United States v. Ross, 456 U.S. 798, 820-21, 824 (1982). Probable cause did not evaporate in the short time between the discovery of marijuana and the subsequent search of the trunk. California v. Acevedo, 111 S.Ct. 1982, 1986 (1991); Chambers v. Maroney, 399 U.S. 42, 44, 51-52 (1970).
 
 
 9
 Bowers contends that the government has abandoned probable cause as a justification for its search of the trunk. Certainly the government has come perilously close to doing so, having acceded to the district court's characterization of its argument as a search incident to arrest and having argued in its appellate brief only that the search was justified as an inventory search or pursuant to Bowers' original consent to search the trunk. However, the government did assert probable cause as a justification for the search in its opposition to Bowers' motion to suppress. Moreover, the facts in this case are not in dispute and the issue has been fully briefed. Compare United States v. Winslow, No. 91-30043, slip op. at 3367 (Apr. 1, 1992) (reaching question of outrageous government conduct raised for first time on appeal). Under the circumstance of this case, the government's reassertion of probable cause has not "deprive[d] [Bowers] of an adequate opportunity to respond." Giordenello v. United States, 357 U.S. 480, 488 (1958).
 
 III
 
 10
 Bowers challenges the validity of his convictions on several other grounds. First, he argues that the evidence was insufficient to establish his connection to the alleged conspiracy. Second, he argues that the evidence was insufficient to show that he aided and abetted possession of a controlled substance. Third, he argues that the jury instructions were defective.
 
 
 11
 In reviewing sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution and we must affirm the conviction if any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). "Proof of the defendant's connection to the conspiracy requires a showing that the defendant knew of the existence of the conspiracy and acted with the intent to further its goals." United States v. Esparza, 876 F.2d 1390, 1392 (9th Cir.1989). The conspiracy in this case focuses on the methamphetamine that was found in Bowers' trunk. Bowers contends that he was asleep when Betonio and Bressette placed the drugs in his trunk. However, the trip in Bowers' car from Laughlin, Nevada and Bullhead City, Arizona to Chula Vista and Escondido, California, and back again appears to have had no other purpose than to pick up drugs. A small package of methamphetamine, albeit of a different grade from the methamphetamine in the trunk, was found on Bowers' person. Also found on Bowers' person was a ledger showing "business expenses." The parties stipulated that Samantha Keller, had she been available to testify, would have stated that Bowers owed a number of gambling debts and that she recognized several names on the ledger as being persons who frequented casinos in Laughlin, Nevada. However, the jury might still have concluded that the ledger showing "business expenses" was a drug ledger. Based on this evidence, a rational trier of fact could have found that Bowers knew of the conspiracy to possess methamphetamine with intent to distribute. It could further have found that Bowers intended to further this conspiracy by providing his car as transportation. We hold that there was sufficient evidence to convict Bowers on the conspiracy count.
 
 
 12
 Bowers also contends that there was insufficient evidence to support a finding that he aided and abetted possession of the methamphetamine because the government offered no proof that he knew there was methamphetamine in his trunk. In our view, the evidence just discussed was sufficient to permit a rational jury to infer that Bowers knew Betonio and Bressette had put methamphetamine in his trunk. Once the jury had found knowledge, the fact that Bowers provided his car as transportation supported a finding that Bowers assisted in the commission of the underlying offense.
 
 
 13
 Finally, Bowers contends that the trial court's instructions to the jury were deficient because they permitted the jury to convict him of aiding and abetting without finding that someone else had committed the underlying crime. Because Bowers did not object to the instruction, we review for plain error. United States v. Bustillo, 789 F.2d 1364, 1367 (9th Cir.1986). The aiding and abetting instruction given in this case is identical to the instruction we upheld in United States v. Armstrong, 909 F.2d 1238, 1244 (9th Cir.), cert. denied, 111 S.Ct. 191 (1990). In this case, the trial court went even further, cautioning the jury, "You, of course may not find any defendant guilty, unless you find beyond a reasonable doubt that every element of the offense, as defined in these instructions, was committed by some person or persons and that the defendant participated in its commission." These instructions were sufficient to ensure that Bowers would not be convicted of aiding and abetting unless the jury found that someone had committed the underlying offense. They do not constitute plain error.
 
 
 14
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3