Filed 12/4/14  In re Michael B. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re Michael B., a Person Coming Under the Juvenile Court Law.<br><br>_____<br><br>THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>Michael B.,<br><br>      Defendant and Appellant. | H040055<br>(Santa Clara County<br> Super. Ct. No. 3-11-JV-38837I) |

A juvenile wardship petition alleged Michael B., the minor, engaged in conduct that would constitute the following offenses if committed by an adult:  Count One—theft of a vehicle (Veh. Code, § 10851, subd. (a)); Count Two—receiving a stolen vehicle (§ 496d); Counts Three and Four—receiving stolen property (§ 496, subd. (a)); and Count Five—first degree residential burglary (§§ 459, 460, subd. (a)).[1]  As to Count Five, the petition alleged that a person was present during the commission of the burglary. (§ 667.5, subd. (c)(1).)  After a contested jurisdictional hearing, the juvenile court dismissed Count One and sustained Counts Two through Five.  The court continued the

---

[1] All subsequent references to the alleged offenses refer to conduct that would be criminal if committed by an adult.  Undesignated statutory references are to the Penal Code.

minor's wardship and committed him to a boys' ranch for six to eight months. The court also imposed $150 in attorney fees.

On appeal, the minor contends the juvenile court erred in denying his motion to dismiss the petition under *Kellett v. Superior Court* (1966) 63 Cal.2d 822 (*Kellett*). Second, the minor asks that we modify the judgment to clarify that he is not personally liable for attorney fees.

We conclude the juvenile court properly denied the *Kellett* motion, but we will modify the judgment to clarify that the minor is not personally liable for attorney fees. We will affirm the judgment as modified.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In November 2011, at age 14, the minor lived with his mother in San José. To his mother's dismay, the minor began spending a lot of time with his older cousin, Jaime N., who turned 18 on November 30, 2011. The minor's mother tried to keep him away from Jaime, because Jaime had been in "a lot of trouble before." Around late November or early December 2011, the minor ran away from home and joined up with Jaime. The minor's father filed a missing person report on December 6, 2011.

A. *Facts of the Offenses*

On November 27, 2011, a white, 1999 Toyota Camry was stolen from Tieu Nguyen in San José.

1. *The Burglaries*

On the afternoon of December 6, 2011, someone burglarized Magdalena Deibert's home in San José. The burglar or burglars entered an unlocked garage window and stole musical instruments, laptops, electronics, and jewelry. There were no witnesses to this burglary identified in the record.

At 10:00 a.m. on December 7, 2011, two persons burglarized the home of Prashanta Vanka's parents in San José. Vanka was home alone in his bedroom upstairs. Someone knocked on a door downstairs and rang the doorbell a couple times. Vanka

2

ignored it.  Five or 10 minutes later, a Hispanic man went upstairs and entered Vanka's bedroom.  The man appeared to be between the ages of 18 and 26, and he was wearing an Oakland A's baseball cap.  When Vanka asked him who he was, the man claimed, "I'm a bank robber."  The man then ran downstairs while yelling, "Mikey get out."  The man ran through the kitchen and out of the house.  Vanka saw a second male with a pillowcase running out of the house through the master bedroom.  The two burglars then drove away in a white Camry with license plate number 4MAM934.  The burglars took cash, jewelry, laptops and cameras.  Vanka saw that a screen was removed from the master bathroom window, and that someone "took a dump" in the toilet.

At 11:30 a.m. that same day, two males burglarized Bao Tran Bui's home in San José.  Bui's home was a 15-to-20 minute drive from Vanka's home.  Bui heard someone knock on the front door and ring the doorbell several times.  She was preoccupied and did not answer the door.  A few moments later, Bui heard some noise downstairs.  She looked out the front door and saw an older, white sedan parked across the street.  She then looked out a backyard window and saw two males removing things from her kitchen window.  They appeared to be "at least under 20."  One looked Caucasian, and the other looked "maybe Hispanic, Latino."  Bui called out to them and warned them she would call the police, whereupon they ran off.  After calling 911, Bui looked out the front window and saw that the white sedan was gone.  Someone had removed a screen from an unlocked window.  The probation officer's report stated that several fingerprints taken from the crime scene matched the minor's fingerprints.

At around 9:00 a.m. on December 8, 2011, Maria Chu's home in Saratoga was burglarized.  Chu was not at home at the time, but her husband called to report that a neighbor had seen two people walk into the side gate of their home.  Chu drove home, where the neighbor pointed out that Chu's backyard sliding door was open.  Chu saw a white Camry in the area.  After she called the police, the Camry drove away very quickly.

3

A screen had been removed from a bathroom window.  The burglars took jewelry, cash, a backpack, iPhones, and cameras.

2.  *Recovery of the White Camry and Stolen Property*

In the early morning hours of December 10, 2011, the minor's parents were driving around San José looking for him.  At around 3:00 a.m., the minor's mother saw the minor and Jaime sneaking into Jaime's mother's house.  The minor's father got out of the car to chase after the minor.  The minor's mother pleaded with Jaime to "Please let Mikey go," but Jaime prevented her from taking the minor.  Jaime and the minor got into a white Camry, and Jaime drove it away.  The minor's mother called 911.

At around 4:00 a.m., police located the white Camry in front of Jaime's residence. Police determined the car was the white Camry that had been stolen from Tieu Nguyen on November 27.  The car's original license plates had been removed and replaced with license plates numbered 4MAM934.  Those plates had been stolen from a vehicle on the morning of December 7, 2011.

Police found stolen property in the trunk, the front seat, and the back seat of the Camry.  The property included items stolen from Deibert's home and Chu's home.  None of Vanka's property was found in the Camry.  Palm prints on the rearview mirror matched the minor's right palm, and fingerprints from the rear passenger side window matched the minor's fingerprints.  Police also found an Oakland A's baseball cap and jacket in a search of Jaime's bedroom.

Police arrested the minor on December 11, 2011, in connection with the theft of another vehicle—a Pontiac Ventura.

B.  *Procedural History*

1.  *Prior Petitions*

On December 29, 2011, the prosecution charged the minor in Petition A with theft of a vehicle—the Pontiac Ventura on December 11, 2011—and giving a false name to a peace officer.  (Veh. Code, § 10851, subd. (a); § 148.9.)  On April 19, 2012, the minor

4

admitted the allegations. The court declared the minor a ward of the court and placed him in the custody of his parents with electronic monitoring for 90 days.

On October 12, 2012, the prosecution charged the minor in Petition C[2] with first degree residential burglary of Bui's residence on December 7, 2011. (§§ 459, 460, subd. (a).) On November 28, 2012, the minor admitted the allegations in Petition C. The court continued wardship, returned the minor to the custody of his parents, and ordered electronic monitoring for 90 days.

2. *Current Proceedings*

On July 2, 2013, the prosecution charged the minor in amended Petition I with five counts: Count One—the theft of Nguyen's Camry on or about or between November 28, 2011 and December 10, 2011 (Veh. Code, § 10851, subd. (a)); Count Two—receiving a stolen vehicle—Nguyen's Camry—on December 10, 2011 (§ 496d); Count Three— receiving stolen property (a briefcase, jewelry, musical instruments) on December 10, 2011 (§ 496, subd. (a)); Count Four—receiving stolen property (jewelry, money, bags, cameras, and personal electronic devices) on December 10, 2011 (§ 496, subd. (a)); and Count Five—first degree residential burglary of Vanka's residence on December 7, 2011. (§§ 459, 460, subd. (a).) The petition further alleged an enhancement that Vanka was present during the commission of the burglary. (§ 667.5, subd. (c)(1).)

At the contested jurisdictional hearing, the prosecutor specified that the stolen property found in the white Camry—alleged in Counts Three and Four—was the property stolen from Chu and Deibert. Although the Bui burglary had already been charged in Petition C and had been admitted by the minor, the prosecutor introduced testimony from Bui under Evidence Code section 1101, subdivision (b) as evidence of "a common scheme or plan to steal cars and to commit residential burglaries." Bui testified to the facts of the December 7, 2011 burglary of her home as set forth above.

---

[2] During this general time period, the prosecution charged the minor with several other petitions (e.g., Petition B) not at issue in this appeal.

The court dismissed Count One, sustained Counts Two through Five, and sustained the enhancement. After a dispositional hearing on Petition I and two other petitions, the court continued the minor's wardship and committed him to the boys' ranch for six to eight months. The court also imposed $150 in attorney fees.

## II. DISCUSSION

### A. *Motion to Dismiss Under Kellett v. Superior Court*

The minor contends the court erred in denying his motion to dismiss Petition I under *Kellett*, *supra*, 63 Cal.2d 822. He argues that the Bui burglary previously charged in Petition C was part of the same course of conduct as the offenses charged in Petition I, such that the prosecution was required to file the latter charges when it filed Petition C. The Attorney General argues that the prosecution was justified in bringing Petition I at a later time because of a reasonable delay in processing the evidence to support it. The Attorney General further contends that the offenses charged in Petition I were sufficiently unrelated to the offense charged in Petition C to allow for multiple prosecutions.

We find the offenses in the two petitions were too unrelated to bar subsequent prosecution under *Kellett*.

#### 1. *Procedural Background*

At the contested jurisdictional hearing on Petition I, the minor moved to dismiss the petition on two grounds: first, that the 18-month delay in bringing charges had violated his due process rights; and second, that Petition I was barred under *Kellett* because the prosecution had failed to bring those charges in prior petitions. In support of the *Kellett* motion, the minor argued that the conduct charged in Petition I was part of the same course of conduct—what his counsel described as a "spree"—as the conduct charged in Petitions A and C. The prosecutor responded that Petition C was charged separately because fingerprint evidence had placed the minor at the scene of the Bui burglary. The prosecutor further argued that the delay in charging Petition I was due to a delay in analyzing "DNA evidence which was submitted in January of 2012 and did not

6

return until May of 2013." The court denied the motion to dismiss, finding that "it is reasonable, although perhaps unusual, for DNA results to take that long for the people to prosecute."

2. *Legal Principles*

Section 654, subdivision (a) provides, in relevant part: "An acquittal or conviction and sentence under any one [provision of law] bars a prosecution for the same act or omission under any other." This bar against multiple prosecutions may apply even when "the same act" is one of several physical acts forming the same course of conduct charged in a prior prosecution. (*Kellett*, *supra*, 63 Cal.2d at p. 827.) In *Kellett*, the California Supreme Court held that when "the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (*Ibid.*, fn. omitted.)

The purpose of this bar is to prevent the needless harassment and waste of resources that may result from multiple prosecutions for the same act or course of conduct. "If needless harassment and the waste of public funds are to be avoided, some acts that are divisible for the purpose of punishment must be regarded as being too interrelated to permit their being prosecuted successively." (*Kellett, supra,* 63 Cal.2d at p. 827.) Furthermore, the bar on multiple *prosecutions* sweeps more broadly than the prohibition on multiple *punishments* under section 654: "When there is a course of conduct involving several physical acts, the actor's intent or objective and the number of victims involved, which are crucial in determining the permissible punishment, may be immaterial when successive prosecutions are attempted." (*Ibid.*; cf. *Neal v. State of California* (1960) 55 Cal.2d 11, 19 [whether a course of criminal conduct is divisible and

7

therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor].)

The *Kellett* bar against multiple prosecutions applies to juvenile proceedings. (*In re R.L.* (2009) 170 Cal.App.4th 1339, 1343.) We review factual determinations under the deferential substantial evidence test, viewing the evidence in the light most favorable to the prosecution. (*People v. Valli* (2010) 187 Cal.App.4th 786, 794 (*Valli*).) We review de novo the legal question of whether section 654 applies. (*Ibid.*)

   3. *Forfeiture*

As an initial matter, we consider the Attorney General's argument that the minor's claim on appeal is limited to dismissal of Count Five (the Vanka burglary) of Petition I. The Attorney General contends the minor has forfeited his claims as to the remaining counts in Petition I by failing to raise them here or in the juvenile court.

The minor moved in juvenile court to dismiss the entire petition under *Kellett.* While the bulk of his argument was focused on Count Five, he specifically argued that Counts One through Four of Petition I should be dismissed as part of the "same act or course of conduct" as the vehicle theft charged in Petition A. He also argued for dismissal of Counts One and Two on the basis of evidentiary overlap with the allegations of Petition C. These arguments were sufficient to preserve these issues on appeal.

Furthermore, the minor's arguments on appeal are not limited to Count Five of Petition I. Again, while the bulk of the minor's argument focuses on Count Five, he specifically contends in his opening brief that Counts Two, Three, and Four must also be dismissed on the grounds that the prosecution used the same evidence to prove these counts as it would have used to prove Petition C. We conclude the minor has preserved his claim as to Counts Two through Five of Petition I.[3]

---

   [3] Count One of Petition I is not at issue on appeal because the juvenile court dismissed it on other grounds. The minor raises no claims on appeal concerning Petition A. Accordingly, we will not address the Petition A charges in our analysis.

4.  *The Juvenile Court Properly Denied the Minor's Motion to Dismiss*

In applying *Kellett*, we first consider whether the prosecution was or should have been aware that the conduct charged in Petition I was a significant part of the same act or course of conduct as the offense charged in Petition C.  We then consider whether the acts charged in Petition C and Petition I were part of the same "act or course of conduct" under *Kellett*, thereby barring prosecution of Petition I.

a.  *The Prosecution Was or Should Have Been Aware of Multiple Offenses in Which the Same Acts or Course of Conduct Played a Significant Part*

"The *Kellett* rule applies only where 'the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part.' " (*Valli*, *supra*, 187 Cal.App.4th at p. 796 [finding the prosecution was aware of the later charged offense at the time the earlier offense was charged].)  Thus, as a threshold matter, we must first determine whether the prosecution was or should have been aware, when it filed Petition C, that the acts or conduct charged later in Petition I were a significant part of the same act or course of conduct charged in Petition C.

The prosecution filed Petition C on October 12, 2012.  But the prosecution knew or should have known as of January 2012 that the minor had committed the offenses in Petition I, and the prosecution knew or should have known of the connections between them.

First, as to Count Two (receiving a stolen vehicle), police recovered the stolen Camry on December 10, 2011, in front of Jaime's house, soon after the minor's mother told them she had just seen her son in the car.  Police immediately determined that the vehicle had been stolen because the number on the license plates—which had been stolen from another car—did not match the properly recorded license plate number associated with the vehicle identification number.  A police investigator found the minor's

9

fingerprints in the interior of the Camry on December 14, 2011, corroborating his mother's report to police. On January 20, 2012, police spoke again with the minor's mother, who repeated her earlier narrative placing Jaime and the minor in the Camry. As the testimony by police investigators made clear, by that point in time, they were well aware of the minor's connection to the stolen Camry.

As to Counts Two and Three (receipt of property stolen from Chu and Deibert), the property was recovered from inside the Camry at the same time police recovered the car. During a visit to the police property warehouse on December 21, 2011, Deibert identified the property stolen from her. As to Chu's property, she had first spotted the white Camry outside her house on the morning of the burglary on December 8, 2011. She saw the Camry drive away quickly after she called the police. She also identified a large amount of her stolen property found in the Camry.

As to Count Five (the Vanka burglary), Vanka witnessed the burglary when it happened on December 7, and reported two persons—one called "Mikey"—driving away from his house in the white Camry. He reported the license plate number to the police, who matched it to the number of the stolen plates on the Camry when it was recovered on December 10, 2011. Vanka was unable to identify any of his property among the items stored at the police warehouse, but police connected the minor to the burglary through Vanka's identification of the Camry by its license plates, which were known at the time the vehicle was recovered. The prosecution was or should have been aware of all this evidence by January 20, 2012, more than eight months before Petition C was filed.

Furthermore, the police were aware of the common facts connecting these offenses to the Bui burglary charged in Petition C. Bui reported seeing a white sedan parked outside her home during the burglary on December 7, 2011. The car had driven away after she called 911. She had reported seeing two persons, one of whom was Hispanic. And most importantly, police had recovered the minor's fingerprints from Bui's house and from the inside of the Camry at some point before Petition C was filed. Based on the

10

timing of the Bui burglary (committed about 90 minutes after the Vanka robbery), the presence of a white sedan, and the presence of the minor himself, the prosecution was or should have been aware that the Bui burglary was related to the offenses charged in Petition I. Thus, we must examine whether the offenses were part of the same "act or course of conduct" under *Kellett*, thereby barring prosecution of Petition I.

>b. *The Offenses Were Not Part of the Same Act or Course of Conduct*

As the court explained in *Valli*, appellate courts have adopted two different tests to determine whether multiple offenses arise during the same act or course of conduct under *Kellett*. (*Valli*, *supra*, 187 Cal.App.4th at p. 797.) Under one line of cases, multiple prosecutions are not barred if the offenses were committed at separate times and locations. (*People v. Douglas* (1966) 246 Cal.App.2d 594, 599 (*Douglas*) [no bar to multiple prosecution where each offense had a separate beginning, duration, and end, none of which overlapped]; *People v. Ward* (1973) 30 Cal.App.3d 130, 136 [no bar to multiple prosecution where crimes were committed at different locations, at different times, against different victims, and with different objectives]; *People v. Cuevas* (1996) 51 Cal.App.4th 620, 624 [no bar to multiple prosecution for offenses committed at different times and at different places]; cf. *People v. Britt* (2004) 32 Cal.4th 944, 955 [multiple prosecutions barred where registered sex offender moving from one county to another failed to notify both counties of his change in residence].) We will refer to this as the "time-and-place" test.

A second version of the test—the "evidentiary test"—looks to the evidence necessary to prove the offenses. (*People v. Flint* (1975) 51 Cal.App.3d 333 (*Flint*).) "[I]f the evidence needed to prove one offense necessarily supplies proof of the other, [. . .] the two offenses must be prosecuted together, in the interests of preventing needless harassment and waste of public funds." (*People v. Hurtado* (1977) 67 Cal.App.3d 633, 636 (*Hurtado*).) However, "The evidentiary test of *Flint* and *Hurtado* requires more than a trivial overlap of the evidence. Simply using facts from the first prosecution in the

11

subsequent prosecution does not trigger application of *Kellett*." (*Valli*, *supra*, 187 Cal.App.4th at p. 799.)

We need not decide which of these two tests properly sets forth the application of section 654 because the minor's claim cannot succeed under either version.

First, under the evidentiary test, the evidence necessary to prove Petition C (the Bui burglary) was largely distinct from that necessary to prove the charges in Petition I (receipt of the stolen Camry, receipt of the Chu and Deibert property, and the Vanka burglary). Evidence needed to prove the offenses in Petition I consisted primarily of evidence putting the minor in the Camry—e.g., his mother's testimony and his fingerprints in the car—and testimony from Chu and Deibert identifying their stolen property, which was found in the Camry when it was recovered.

By contrast, evidence needed to prove the Bui burglary, charged in Petition C, consisted of two pieces: (1) Bui's testimony, and (2) the minor's fingerprints found in Bui's residence. The fingerprints found in Bui's residence were entirely separate from any evidence needed to prove the charges in Petition I. The minor argues that there was evidentiary overlap between Bui's testimony and the charges in Petition I because Bui stated that she saw a white sedan outside, which was gone after the burglary was complete. But the connection between this testimony and the evidence needed to prove Petition I is too slim to bar multiple prosecutions. (*Valli*, *supra*, 187 Cal.App.4th at p. 799 [evidentiary overlap must be more than trivial for *Kellett* to apply].)

The minor further argues that the prosecution's introduction of Bui's testimony under Evidence Code section 1101 demonstrates evidentiary overlap between the two petitions. But Bui's testimony was not necessary to prove the charges in Petition I. The prosecution had strong evidence to support those charges apart from Bui's testimony. As to Counts Two through Four, the prosecution could have convicted the minor based solely on his presence in the Camry and the presence of the stolen property in it. As to Count Five, the prosecution could have relied on Vanka's identification of the white

12

Camry by its license plate number. Vanka also provided significant eyewitness testimony to the burglary, including his description of Jaime's appearance, and Jaime's use of the nickname "Mikey," which the minor's mother also used to identify him. Bui's testimony was largely cumulative of this evidence. On this record, any evidentiary overlap between the charges in the two petitions was too modest to support a bar on the latter prosecution.

Furthermore, had the offenses been charged together, the prosecution would have introduced the same testimony from Bui she gave at the hearing for Petition I. We perceive no waste of resources under these circumstances, wherein the witness was required to testify only once. Of course, these circumstances arose only because the minor chose to admit the charge in Petition C, but there is no rule barring the use of a defendant's admission in a prior case as the basis for a new prosecution. (*Valli*, *supra*, 187 Cal.App.4th at p. 800 [citing *United States v. Baker* (9th Cir. 1988) 850 F.2d 1365, 1370].) We conclude that, under the evidentiary test, *Kellett* did not bar the prosecution of Petition I.

We reach the same conclusion under the time-and-place test described in *Douglas*, *supra*, 246 Cal.App.2d at page 599. First, the Bui burglary charged in Petition C was completely separate in time and space from the Vanka burglary charged in Count Five of Petition I. The Vanka burglary began at the Vanka residence at around 10 a.m. on December 7, 2011, and the offense was completed as soon the minor entered the house with the requisite intent. "It is defendant's intention at the time he made the entry that is determinative, since burglary arises when a person enters the house of another with the intent to commit a felony. [Citation.] What occurs later—completion of the felony, abandonment, or capture—is irrelevant to the original crime." (*People v. Bard* (1968) 70 Cal.2d 3, 5.) The two youths then left the Vanka residence and drove for 15 to 20 minutes to Bui's residence—a completely separate location. There, the minor began and ended the Bui burglary with no overlap in time or space to the Vanka burglary. The

13

minor argues that the two offenses happened very close in time—at 10:00 a.m. and 11:30 a.m.—but this does not suffice under the test set forth in *Douglas*. We conclude that these two offenses were too distinct in time and space to form the same course of conduct for purposes of *Kellett*.

By the same token, the receipt of stolen property from Chu constituted a separate act or course of conduct under the time-and-place test. The Chu burglary did not occur until December 8, 2011, the day after the Bui robbery. The minor could not have been in receipt of the stolen property until that time, and there was no evidence he received it at or near the Bui residence. Accordingly, there was no overlap in time or space between the Bui burglary and the receipt of stolen property from Chu.

Arguably, receipt of the stolen property from Deibert and receipt of the stolen Camry briefly overlapped in time with the Bui burglary, assuming the minor was in possession of the stolen property and the Camry at the time of the Bui burglary. But the evidence does not clearly support this assumption. The evidence shows that both the Camry and Deibert's property were stolen before the Bui burglary, but it is not clear whether the minor had possession of those items at the time of the Bui burglary. Because there were no witnesses to the theft of the Camry or the burglary of Deibert's residence, it is possible that Jaime or some other third party acting alone committed those offenses, and that the minor came into possession of the stolen items at a later time. Although Bui testified that she saw a white sedan outside her residence, we do not think this evidence so clearly establishes the minor's possession of the stolen Camry that it barred any subsequent prosecution for that offense.

For these reasons, we conclude that *Kellett* did not bar prosecution of any of the offenses charged in Petition I. Accordingly, we need not reach the issue of whether the prosecution was unable to proceed due to delay that may have occurred in analyzing DNA evidence.

14

B. *Imposition of Attorney Fees*

The minor contends the juvenile court lacked the authority to impose attorney fees on him personally. He requests that we modify the record to clarify that only his parents are liable for the $150 in attorney fees imposed by the juvenile court. The Attorney General agrees that a minor may not be held liable for attorney fees, but she argues that modification is unnecessary based on the record.

1. *Procedural Background*

In its oral pronouncement at the dispositional hearing, the juvenile court ordered "fees in the amount of $150" without specifying who was liable for the fees. The written dispositional order required the parents—but not the minor—"to appear within thirty days before a financial officer from the Department of Revenue for an evaluation of the ability to pay certain reimbursable costs: [¶] . . . Conflict Attorney's fees $150.00 . . . ." However, another section of the order states that "Minor and parents/guardian(s) are presumed jointly and severally responsible for the payment of restitution, fines, or penalty assessments (W.I.C. 730.7)." The court also adopted certain recommendations in the probation report, which were incorporated into the written dispositional order. The adopted portion of the probation report did not explicitly recommend imposition of attorney fees, but it recommended that the minor and parents be held jointly liable for restitution, a general fund fine, and penalty assessments.

2. *Legal Principles*

Welfare and Institutions Code section 903.1 provides, in relevant part: "The father, mother, spouse, or other person liable for the support of a minor, the estate of that person, and the estate of the minor, shall be liable for the cost to the county or the court, whichever entity incurred the expenses, of legal services rendered to the minor by an attorney pursuant to an order of the juvenile court." This provision "does not authorize juvenile courts to impose attorney fees on a minor if the minor is under 18 years of age when counsel is appointed." (*In re Gary F.* (2014) 226 Cal.App.4th 1076, 1083.)

15

Accordingly, only the minor's parents may be held liable for attorney fees. (*Ibid.*) Because the imposition of attorney fees on a minor constitutes an unauthorized sentence, failure to object below does not forfeit the claim on appeal. (*Id.* at p. 1083, fn. 5.)

3. *The Record Does Not Show on Whom the Court Imposed Attorney Fees*

The record here does not clearly show whether the juvenile court imposed attorney fees on the minor. In its oral order, the juvenile court did not specify on whom it was imposing attorney fees. Furthermore, the written dispositional order contains several statements referring generally to fines and penalty assessments that could reasonably be interpreted to impose joint liability on the minor and parents for attorney fees. Because the juvenile court was not authorized to impose attorney fees on the minor, we will order the record modified to clarify that the minor is not liable for attorney fees.

### III. DISPOSITION

The judgment is modified as follows: The minor is not liable for any portion of the attorney fees assessed by the juvenile court. As modified, the judgment is affirmed.

_____

MÁRQUEZ, J.

We concur:

_____

BAMATTRE-MANOUKIAN, J.

_____

GROVER, J.

17