UNITED STATES of America,
Plaintiff-Appellant-Cross-Appellee,

v.

Pierre FOUCHE,
Defendant-Appellee-Cross-Appellant.

Nos. 84–5262, 84–5283.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 1985.

Decided Nov. 19, 1985.

Enrique Romero, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellant-cross-appellee.

Carlton Gunn, Los Angeles, Cal., for defendant-appellee-cross-appellant.

Before CHAMBERS, TANG, and WIGGINS, Circuit Judges.

TANG, Circuit Judge.

Pierre Fouche appeals his conviction on two counts of unarmed bank robbery, in violation of 18 U.S.C. § 2113(a). He argues that the district court erred in finding that: (1) founded suspicion existed to stop his car; (2) probable cause existed for his arrest; and (3) he failed to reclaim his right to counsel before his first confession. The government cross-appeals, arguing that the district court erred in finding Fouche's second confession involuntary as a product of unreasonable pre-arraignment delay.

We affirm the district court's findings that the police had founded suspicion to stop Fouche's car and probable cause to arrest him for bank robbery. We also affirm the district court's suppression of Fouche's second confession. On the question of Fouche's attempt to reclaim the right to counsel before his first confession, however, we vacate and remand for additional findings.

## I

### FACTS

At approximately 2:26 p.m. on May 3, 1984, Montebello police officer Ramos responded to a call that the East West Federal Bank had just been robbed. The robbery suspect was described by radio communication as a black male, approximately 24 years old, 6 feet tall, with a small afro hairstyle, wearing a brown shirt, navy blue pants and white tennis shoes, last seen running away from the bank.

Ramos drove toward the bank in his unmarked police car. He saw a car quickly exit a driveway near the bank. He observed that the driver, later identified as Fouche, was a young black male with a short afro hairstyle who was "looking around suspiciously." Fouche accelerated rapidly, drove at 50 miles per hour through a flashing yellow light in a 25-mile-per-hour school zone, and ran a stop sign before Officer Ramos stopped him on the "on ramp" to the Pomona Freeway.

After the stop, Ramos noticed that Fouche was sweating profusely, acting very nervously, and wearing navy blue pants. When Fouche stepped from the car Officer Ramos saw that he was wearing white tennis shoes. The police brought the bank teller who had been robbed, Ms. Thach, to the scene of the stop, but she could not identify Fouche. Fouche was arrested, transported to the Montebello Police Station, and booked.

At 4:15 p.m. FBI agents Alba and Ochotorena met with Fouche. The agents read Fouche his *Miranda* rights. Then Fouche read aloud, stated he understood, and signed a form waiving his right to counsel. Fouche talked with the agents, but denied robbing the East West Bank. During the course of the interrogation, agent Alba discussed the penalties for bank robbery and told Fouche that the East West Bank teller had identified him as the robber from some photographs. At that point, Fouche stated that he might want to speak to a lawyer, and wanted to make a phone call.

According to agent Alba, the agents immediately stopped the interrogation, but before Fouche left to make his call, he asked the agents to "stay around." Alba reportedly told Fouche that they did not want to waste their time if Fouche did not want to discuss the robbery. Alba stated that Fouche again asked that they stay because he might want to talk to them. According to Fouche, after he said he might want a lawyer, the agents asked him if he still wanted to talk to them, and he said he wanted to make a phone call first.[1]

When Fouche returned from making his phone call, he apparently informed the agents that he had called his wife.[2] Agent Alba did not attempt to clarify whether Fouche still might want a lawyer. Alba immediately read Fouche his rights from the waiver form that Fouche had signed, and asked if Fouche understood what had been read. When Fouche said yes, Alba asked if Fouche wished to make a statement about the robbery. Fouche then confessed to robbing the East West Bank and another bank, and gave the agents consent to search his car. They found a bag, a gun, money, bait money, and a dye pack.

The FBI interrogation ended at 6:00 p.m., and at 6:45 p.m. the agents received authorization from the United States Attorney to place a federal hold on Fouche. Fouche

---

1. Fouche argued on appeal that he asked the agents to stay only after they threatened to leave if he did not want to discuss the robbery. His affidavit suggests, but does not contain specific facts supporting, this sequence of events.

2. Agent Alba acknowledged that he knew that Fouche had called his wife and not a lawyer.

spent the night in a county jail in East Los Angeles.

At approximately 11:00 the next morning, the agents picked up Fouche for the 15-minute ride to the federal courthouse. During the ride agent Alba again read Fouche his rights, informed him that they wanted to question him about other bank robberies, and asked if he was willing to answer questions. Fouche agreed and subsequently admitted two more bank robberies. The government brought Fouche before a magistrate that afternoon.

Fouche was indicted on four counts of bank robbery. Before trial, he moved to suppress statements and evidence as alleged fruits of an illegal stop and arrest. He subsequently moved to suppress his two confessions, claiming the first violated his right to counsel, and the second was involuntary because of an unreasonable pre-arraignment delay. The district court found that founded suspicion existed for the stop, probable cause existed for the arrest, and Fouche had voluntarily waived his right to counsel before the first confession. The court suppressed the second confession, however, as involuntary because it violated 18 U.S.C. § 3501.

Fouche entered a conditional guilty plea and was convicted on two counts of bank robbery, in violation of 18 U.S.C. § 2113(a). He was sentenced to two concurrent 9-year prison terms.

## II

### DISCUSSION

A. *Founded Suspicion to Stop*

This court reviews de novo the district court's conclusion that founded suspicion existed for the stop of Fouche's car. *See United States v. Maybusher,* 735 F.2d 366, 372 & n. 1 (9th Cir.1984), *cert. denied,*

— U.S. ——, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985). The findings of fact on which the district court based its conclusion are reviewed under a clearly erroneous standard. *United States v. McConney,* 728 F.2d 1195, 1200–01 (9th Cir.) (en banc), *cert. denied,* — U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

Police officers may make a brief investigatory stop of a moving vehicle, consistent with the requirements of the fourth amendment, if under the totality of the circumstances, they are aware of articulable facts leading to a reasonable or founded suspicion that the person has been, is, or is about to be engaged in criminal activity. *See Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *see also United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981); *Maybusher,* 735 F.2d at 371. Founded suspicion must exist at the time the officers initiate the stop. *United States v. Doe,* 701 F.2d 819, 821 (9th Cir.1983); *United States v. Morrison,* 546 F.2d 319, 320 (9th Cir.1976).

Fouche argues that, under the totality of the circumstances, officer Ramos lacked founded suspicion for the stop. He contends that Ramos impermissibly considered his race in stopping him; that his traffic violations, if any, were not uncommon or especially significant;[3] and that officer Ramos's opinion that he was "looking around suspiciously" is too subjective to be entitled to substantial weight. These contentions fail.

First, although race or color alone is not a sufficient basis for making an investigatory stop, *United States v. Bautista,* 684 F.2d 1286, 1289 (9th Cir.1982), *cert. denied,* 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 446 (1983), racial appearance may be considered as a factor contributing

---

3. Fouche argued that officer Ramos did not consider Fouche's traffic violations serious or significant because he failed to note them in his arrest report. Fouche asserted that Ramos's testimony to the contrary was exaggerated and inaccurate. The decision to credit or discredit Ramos's testimony was within the exclusive domain of the district court. *See United States v. Licata,* 761 F.2d 537, 544 (9th Cir.1985); *United States v. Henry,* 615 F.2d 1223, 1230 (9th Cir. 1980). That decision will not be reversed unless clearly erroneous. *See Licata,* at 544; *McConney,* 728 F.2d at 1200–01. The district court's decision here was not clearly erroneous.

to a founded suspicion of criminal conduct. *Id. Compare United States v. Mallides,* 473 F.2d 859, 862 (9th Cir.1973) (officers' observation of six Mexican-appearing men in a car who sat stiffly did not justify a stop to investigate whether they were illegal aliens), *with Bautista,* 684 F.2d at 1289 (officers could consider fact that defendants' racial appearance matched racial description of robbery suspects as one factor in deciding to stop the car). Thus, in light of the broadcast description of the suspect as a black male, officer Ramos could permissibly consider Fouche's race and color as one factor in deciding whether to make the stop.

■ Second, regardless of how common Fouche's traffic violations were, they constituted criminal conduct and, even standing alone, provided founded suspicion for a brief investigatory stop. *See Delaware v. Prouse,* 440 U.S. 648, 661, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660 (1979); *United States v. Burt,* 765 F.2d 1364, 1368 (9th Cir.1985). Moreover, although "looking around suspiciously" may be a subjective observation that alone would be entitled to little weight, *see Mallides,* 473 F.2d at 861, it may be considered under the totality of circumstances. Inferences or deductions apparent to trained law enforcement officers may be considered. *See Cortez,* 449 U.S. at 418, 101 S.Ct. at 695; *United States v. Corral-Villavicencio,* 753 F.2d 785, 789 (9th Cir.1985).

■ Here, the record reflects that before officer Ramos stopped Fouche, he knew that the East West Bank had been robbed; he had observed Fouche's car quickly exit a driveway near the bank within minutes of the robbery; Fouche matched part of the physical description of the robber (a young black male with a short afro hairstyle); and Fouche was "looking around suspiciously," sped through a school zone, and ran a stop sign. Under the totality of the circumstances, officer Ramos had founded suspicion to stop Fouche's car.

## B. *Probable Cause to Arrest*

This court reviews de novo the district court's conclusion that officer Ramos had probable cause to arrest Fouche. *United States v. Howard,* 758 F.2d 1318, 1319–20 & n. 1 (9th Cir.1985) (*citing McConney,* 728 F.2d at 1203).

■ Probable cause to arrest arises when police officers have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *United States v. Hillison,* 733 F.2d 692, 697 (9th Cir.1984). The officers' experience may be considered in determining probable cause. *United States v. Thornton,* 710 F.2d 513, 515 (9th Cir.1983). "Conduct innocent in the eyes of the untrained may carry entirely different 'messages' to the experienced or trained observer." *United States v. Bernard,* 623 F.2d 551, 560 (9th Cir.1980) (*citing Davis v. United States,* 409 F.2d 458, 460 (D.C.Cir.), *cert. denied,* 395 U.S. 949, 89 S.Ct. 2031, 23 L.Ed.2d 469 (1969)).

The record reflects that after officer Ramos stopped Fouche, he observed that Fouche's pants and shoes matched the description of the pants and shoes worn by the robber, and that Fouche appeared to be very nervous and was sweating profusely.

Fouche argues that the additional facts that came to light after Ramos stopped him are insufficient to support a finding of probable cause that he had committed a crime. He contends that navy blue pants and white tennis shoes are too common to support any criminal inference, particularly because his shirt did not match the description of the robber. He also contends that his sweating and nervousness were insignificant because the day was hot, and that the bank teller's inability to identify him at the scene of the stop, just minutes after the robbery, suggests innocence rather than guilt. These contentions fail.

Although Fouche's navy blue pants and white tennis shoes, viewed alone, could not

constitute probable cause, they were significant under the totality of the circumstances to link Fouche to the robbery. Further, while nervousness and profuse sweating might be consistent with innocence, here they could reasonably provide officer Ramos with trustworthy support for his conclusion that Fouche was the bank robber. Finally, bank teller Thach's inability to identify Fouche as the bank robber was not dispositive. Rather, it was only one of many factors that officer Ramos was required to consider in determining whether there was probable cause for the arrest.

We find that, under the totality of the circumstances, officer Ramos had sufficiently trustworthy information to provide probable cause to arrest Fouche.

## C. *Attempt to Reclaim the Right to Counsel*

The district court found that Fouche's first confession was voluntary. The finding of voluntariness is a state of mind inquiry, which is an "essentially factual" determination. *See McConney,* 728 F.2d at 1203 (*citing Pullman-Standard v. Swint,* 456 U.S. 273, 288, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982)). We therefore review the district court's finding for clear error. *United States v. Doe,* 764 F.2d 695, 697–98 (9th Cir.1985); *United States v. Licata,* 761 F.2d 537, 544 (9th Cir.1985); *United States v. Allen,* 699 F.2d 453, 459 (9th Cir.1982) (applying clearly erroneous standard pre-*McConney* ).

The fifth amendment's prohibition against compelled self-incrimination requires that before a custodial interrogation, a suspect must be advised that he has the right to remain silent and the right to the presence of an attorney. *Miranda v. Arizona,* 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). If the suspect requests counsel, the interrogation must cease until an attorney is present. *Id.* at 474, 86 S.Ct. at 1627. If the interrogation continues without the presence of a requested attorney and the suspect gives a statement, the government has a heavy burden to demonstrate that the suspect

knowingly and intelligently waived his privilege against self-incrimination and his right to counsel. *Id.* at 475, 86 S.Ct. at 1628. A valid waiver will not be presumed simply because the suspect eventually confessed. *Id.*

Fouche contends that his statement that he might want to talk to a lawyer was a valid assertion of his right to counsel under *Miranda.* The government contends that the statement was too equivocal to be interpreted as a valid assertion.

The Supreme Court has not addressed what constitutes a valid assertion of the right to counsel. *Miranda* states that a suspect invokes his right to counsel when he "indicates in any manner" that he wishes to consult an attorney. 384 U.S. at 444–45, 86 S.Ct. at 1612. In *Edwards,* the Court refers to a right to counsel that has been "specifically invoked." *Edwards v. Arizona,* 451 U.S. 477 at 482, 101 S.Ct. 1880 at 1884, 68 L.Ed.2d 378 (1981). In *Brewer v. Williams,* 430 U.S. 387, 404–05, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977), the Court speaks of "clear[ ] expressions" of desire for the presence of counsel. No Ninth Circuit cases provide guidance.

The Sixth Circuit, however, has taken the position that an equivocal assertion of counsel is sufficient under *Miranda* to invoke the right to counsel. *See Maglio v. Jago,* 580 F.2d 202, 205 (6th Cir.1978) (relying on *Miranda* 's requirement that questioning cease if a suspect "indicates in any manner" that he wishes to consult an attorney before speaking). *See also United States v. Prestigiacomo,* 504 F.Supp. 681, 683 (E.D.N.Y.1981) ("Maybe it would be good to have a lawyer" held sufficient to invoke right to counsel under *Miranda* ).

The Fifth Circuit takes a slightly different and, we think, more reasonable approach. It holds that where a suspect makes an equivocal assertion of counsel, the police must cease all questioning, except that they may attempt to clarify the suspect's desire for counsel. *See, e.g., United States v. Cherry,* 733 F.2d 1124, 1130–31 (5th Cir.1984); *Thompson v.*

*Wainwright,* 601 F.2d 768, 769, 771 (5th Cir.1979). Questions aimed at clarifying the desire for counsel must be strictly limited to that purpose; they may not be used to elicit incriminating information. *Nash v. Estelle,* 597 F.2d 513, 517 (5th Cir.) (en banc), *cert. denied,* 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409 (1979); *Thompson,* 601 F.2d at 771–72. If clarification reveals that the suspect wants counsel, all interrogation must stop until counsel is provided; if clarification reveals that the suspect does not want counsel, the interrogation may continue. *Thompson,* 601 F.2d at 771. However, the police may not use a statement a suspect makes after an equivocal request for counsel, but before the request is clarified as an effective waiver of the right to counsel. *Id.* at 771–72.

■ We adopt the Fifth Circuit's approach. We find that Fouche's statement that he "might want to talk to a lawyer" constituted an equivocal request for counsel. *See Cherry,* 733 F.2d at 1130–31. Therefore, the FBI agents were immediately required to cease all questioning except that necessary to clarify Fouche's equivocal request. *Id.*

■ A police initiated conversation after an equivocal request for counsel does not automatically void a subsequent confession if the police questions are fairly designed to clarify the ambiguity. On the record before us, we cannot determine whether the FBI agents complied with the restrictions placed upon them. According to government affidavits, the agents ceased all questioning immediately after Fouche made the request; the agents purportedly resumed questioning only after Fouche had his *Miranda* rights read again and had failed to assert his right to an attorney. According to Fouche, however, the agents responded to his request for counsel by asking whether he still wanted to talk to them. The district court made no findings as to what actually occurred.

Findings as to the language and the purpose both of Fouche's and the agent's communications are crucial to the resolution of these issues. Therefore, we vacate and remand to the district court for additional findings and application of those findings to the standard we announce.

The court must determine whether the government's questions were fairly designed to clarify Fouche's ambiguous request. If the court finds that government questioning exceeded permissible limits, it must suppress Fouche's first confession as violative of his right to counsel under *Miranda.* If the court finds government questioning within permissible limits, it must determine whether, under all the circumstances, Fouche succeeded in reclaiming his right to counsel.

### D. *Pre-Arraignment Delay*

On May 4, 1985, while being transported by FBI agents to the federal courthouse for arraignment, Fouche confessed to two more bank robberies. At the time he confessed, he had been in custody for a total of 20 hours. The district court granted Fouche's motion to suppress the confession on the ground that it resulted from unreasonable pre-arraignment delay, in violation of 18 U.S.C. § 3501(c).

The propriety of the district court's construction of section 3501(c) is a legal question, reviewable de novo. *See McConney,* 728 F.2d at 1201. The district court's decision to suppress Fouche's confession under section 3501(c) requires an "essentially factual" determination on voluntariness; therefore, we review that decision for clear error. *See Doe,* at 697–98; *Licata,* at 544.

Section 3501(c) states in relevant part:

> In any criminal prosecution by the United States ..., a confession made or given by a person who is a defendant ... [while] under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate ... if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person

within six hours immediately following his arrest or other detention: *Provided,* that the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate ... beyond such six hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate.... (emphasis in original)

The government contends that the district court erred in aggregating the three hours Fouche spent in federal custody with the 17 hours he spent in local custody in finding unreasonable pre-arraignment delay. The contention fails.

This court has explicitly held that pre-arraignment delay caused by local and federal officials should be considered cumulatively under section 3501(c). *See United States v. Manuel,* 706 F.2d 908, 914 (9th Cir.1983) (delay exceeding six hours is one factor to be considered, regardless of whether the delay is caused by local or federal officials); *United States v. Halbert,* 436 F.2d 1226, 1232 (9th Cir.1970) (statutory language "detention in the custody of any law enforcement officer or law enforcement agency" assumed to require consideration of cumulative local and federal custody). Therefore, contrary to the government's contention, the district court did not err in aggregating Fouche's time in local and federal custody for purposes of determining unreasonable delay under section 3501(c).

In the alternative, the government contends that any delay in bringing Fouche before a magistrate was not unreasonable, and that the district court erred in suppressing Fouche's second confession. In support of this contention, the government notes that although Fouche was arrested

by local police at 3:00 p.m., the United States Attorney's office did not authorize a federal hold until 6:45 p.m., making it impossible to bring Fouche before a magistrate until the next day. Fouche points out, however, that although the first arraignment calendar was at 10:30 the next morning, the FBI agents did not pick him up until 11:00 a.m., and he was not arraigned until three hours later. Fouche contends that the delay was unreasonable and that, because of the delay, he confessed to two additional robberies.

Delay alone generally is insufficient to render inadmissible a confession that otherwise is voluntary. *See Halbert,* 436 F.2d at 1231 (the primary purpose of enacting section 3501 was to remove delay alone as a cause for rejecting a confession and to make the voluntary character of the confession the real test of admissibility). *See also United States v. Edwards,* 539 F.2d 689, 691 (9th Cir.) (delay is only one factor to be considered in determining voluntariness), *cert. denied,* 429 U.S. 984, 97 S.Ct. 501, 50 L.Ed.2d 594 (1976).[4] Under section 3501(c), therefore, a confession is not inadmissible because of delay, if it is otherwise voluntary and made within six hours following arrest or detention. However, if the delay exceeds six hours, and the confession is made thereafter, the district court has the authority to exclude the confession as involuntary, and may do so solely because of the pre-arraignment delay. *Halbert,* 436 F.2d at 1234.

Here, the record shows that Fouche was subject to a federal hold as of 6:45 p.m. on May 3, 1985. The nearest magistrate was only 15 minutes away, and at least two FBI agents were available to transport Fouche. Even assuming that no magistrate was available at 6:45 p.m. when Fouche was put under a federal hold, the government of-

---

**4.** In determining the voluntariness of a confession under 18 U.S.C. § 3501, the trial judge is required to consider all the circumstances surrounding the giving of the confession, including: (1) the time elapsed between the defendant's arrest and arraignment; (2) whether he knew the nature of the offenses of which he was suspected; (3) whether he had been advised of his *Miranda* rights; and (4) whether he was without assistance of counsel when he was questioned and confessed. The presence or absence of any of the above factors need not be conclusive on the voluntariness of the confession. *See* 18 U.S.C. § 3501(b).

fers no reasonable excuse why it did not have Fouche promptly arraigned at 10:30 a.m. the next day. Its only explanation is that the FBI agents assigned to the case were busy investigating whether Fouche had been involved in other bank robberies. In other cases where we have found reasonable pre-arraignment delay exceeding six hours, the government's justification was much stronger. *See, e.g., Edwards*, 539 F.2d at 691 (seven-hour pre-arraignment delay was not unreasonable where the suspect had been apprehended in a remote area, the local authorities were short-staffed, and no officers were available to transport the suspect 125 miles to the nearest magistrate); *see also Manuel*, 706 F.2d at 914 (18-hour delay was not unreasonable where suspect, who was highly intoxicated when arrested, was allowed to sleep and eat breakfast before being questioned).

■ Moreover, we note that at the time Fouche made his second confession, he was without benefit of counsel, notwithstanding his previous equivocal request for counsel. He was confined in a police car with the same two FBI agents who had interrogated him the day before. Given Fouche's prior equivocal request, the absence of an attorney, the oppressive circumstances of a second interrogation in a police car, and the length of time Fouche had been unreasonably detained without arraignment, we find that the district court did not err in suppressing the confession as the involuntary product of unreasonable pre-arraignment delay.

## CONCLUSION

We affirm the district court's findings that founded suspicion existed for the stop of Fouche's car, that probable cause existed to arrest Fouche for bank robbery, and that unreasonable pre-arraignment delay rendered his second confession involuntary. With respect to the district court's finding that Fouche failed to reclaim the right to

counsel before his first confession, however, we vacate and remand for additional findings consistent with this opinion.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.