990 F.2d 1263
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas Francis MCNEELY, Defendant-Appellant.
 No. 92-30294.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 23, 1993.*
Decided April 7, 1993.
 
 Before WALLACE, Chief Judge, and FARRIS and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Thomas Francis McNeely appeals his conviction following a stipulated-facts bench trial for possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g), 924(a). McNeely contends the district court erred by denying his motion to suppress evidence because (1) the initial stop of his vehicle was not based upon reasonable suspicion, and (2) he was subjected to an illegal custodial interrogation which resulted in the discovery of incriminating evidence. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.
 
 
 3
 We review de novo (1) the district court's denial of a motion to suppress, United States v. $25,000 U.S. Currency, 853 F.2d 1501, 1504 (9th Cir.1988), and (2) whether founded suspicion existed for the stop of a vehicle, United States v. Fouche, 776 F.2d 1398, 1402 (9th Cir.1985). We review for clear error the district court's findings of fact. $25,000 U.S. Currency, 853 F.2d at 1504; Fouche, 776 F.2d at 1402; United States v. Crisco, 725 F.2d 1228, 1230 (9th Cir.), cert. denied, 466 U.S. 977 (1984).
 
 1. Traffic Stop
 
 4
 McNeely contends that the Oregon State Trooper who initiated the traffic stop of his motorcycle lacked reasonable suspicion to conduct an investigatory stop of his vehicle. This contention lacks merit.
 
 
 5
 Law enforcement officers "may make a brief investigatory stop of a moving vehicle ... if under the totality of the circumstances, they are aware of articulable facts leading to a reasonable or founded suspicion that the person has been, is, or is about to be engaged in criminal activity." Fouche, 776 F.2d at 1402. Traffic violations constitute criminal conduct which provides founded suspicion for a brief investigatory stop. Id. at 1403; see also United States v. Gutierrez-Mederos, 965 F.2d 800, 803 (9th Cir.1992), cert. denied, 61 U.S.L.W. 3583 (U.S. Feb. 22, 1993) (No. 92-6924).
 
 
 6
 Here, Oregon State Trooper Jed Stone testified to the following events at the suppression hearing. While sitting by a roadway, Trooper Stone saw McNeely drive by on a motorcycle. He noticed that McNeely was wearing a short motorcycle helmet of a type which the trooper knows from experience and training is often not Department of Transportation approved, as required by Oregon state law.[1] Trooper Stone pulled his patrol car out on the highway behind McNeely and noticed at some point before he activated his emergency lights that McNeely's motorcycle was equipped with a "blue dot" taillight, which is also illegal in Oregon.[2]
 
 
 7
 In light of this testimony, and the lack of contradictory testimony or evidence offered by McNeely, the district court did not clearly err by finding that Trooper Stone had reasonable cause to believe McNeely had committed two traffic violations and stopped McNeely for these violations. See Gutierrez-Mederos, 965 F.2d at 803. These traffic violations provided Trooper Stone with founded suspicion for the investigatory stop of McNeely. See id.; Fouche, 776 F.2d at 1403.
 
 2. Custodial Interrogation
 
 8
 McNeely contends that Trooper Stone continued to question him about unrelated and incriminating matters even after the initial traffic stop was concluded and that this constituted custodial interrogation in violation of his constitutional right against self-incrimination. This contention is without merit.
 
 
 9
 "The determination whether a defendant was subjected to custodial interrogation is a factual determination that must be made on a case-by-case basis." Crisco, 725 F.2d at 1230. "Credibility determinations, however, are matters left to the trier of fact." United States v. Vasquez, 858 F.2d 1387, 1391 (9th Cir.1988), cert. denied, 488 U.S. 1034 and 489 U.S. 1029 (1989).
 
 
 10
 Trooper Stone testified that immediately after the traffic stop, he informed McNeely why McNeely was stopped, obtained McNeely's identification, returned to the patrol car and found that there were no outstanding wants or warrants for McNeely in Oregon. Before Trooper Stone returned McNeely's identification, and while he was on his police radio, the trooper noticed that McNeely was maneuvering himself close to the trooper's right side where he keeps his gun. Trooper Stone asked McNeely several times to move back to the front of the patrol car while he was on the radio. Trooper Stone then turned off his patrol car lights and walked back over to McNeely. The trooper handed McNeely back his identification, thanked him and advised him to get a new helmet, but did not issue a citation for either the helmet or the taillight violations.
 
 
 11
 McNeely had engaged Trooper Stone in conversation while the trooper was on the police radio, and McNeely continued the conversation after Trooper Stone had returned his identification and thanked him. As Trooper Stone prepared to leave, McNeely followed him around the patrol car and engaged him in conversation about various outlaw motorcycle groups and other miscellaneous topics. Finally, Trooper Stone requested permission to ask McNeely a question. Receiving an affirmative reply, the trooper inquired about a bulge that he had noticed in the breast pocket of McNeely's jacket. McNeely proceeded to show Trooper Stone the contents of some of his pockets, but not the one the trooper had asked about. Trooper Stone then reached out and patted the pocket to which he was referring. He felt what he recognized to be a speed loader for a gun. After some further questioning about the contents of the pocket, McNeely admitted that he was carrying a gun. Following this admission, Trooper Stone seized both the speed loader and the gun from McNeely's person.
 
 
 12
 McNeely's testimony at the suppression hearing did not contradict Trooper Stone's in any significant fashion. McNeely did testify that he felt that he was not free to leave at any time during the conversation with the trooper.
 
 
 13
 The district court found that McNeely persisted in talking with Trooper Stone even after the trooper had elected not to cite McNeely and had made some attempts to leave. It was this conversation which eventually led to the discovery of McNeely's weapon. In light of the evidence offered by the government at the suppression hearing, and the lack of significant contradictory testimony offered by McNeely, we hold that this finding was not clearly erroneous. See Crisco, 725 F.2d at 1231. Accordingly, McNeely was not yet in custody when he made the incriminating statements leading up to the discovery of his gun. See id.
 
 
 14
 Therefore, the district court did not err by denying McNeely's motion to suppress his incriminating statements and the evidence derived therefrom. See $25,000 U.S. Currency, 853 F.2d at 1505.
 
 
 15
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Or.Rev.Stat. § 814.269(1) provides that "[a] person commits the offense of failure ... to wear protective headgear if the person operates a motorcycle and is not wearing protective headgear of a type approved under ORS. 815.050." Or.Rev.Stat. § 815.050(1) provides that Oregon's rules governing protective headgear for motorcycle operators must "conform, insofar as practicable, to safety standards and specifications for such headgear issued by the Federal Government."
 
 
 [2]
 Trooper Stone testified that "blue dot" taillights such as McNeely's give off a purplish or blue hue when activated. McNeely concedes that he did have a "blue dot" taillight but contends that it was legal under Oregon law. Or.Rev.Stat. § 816.080(2), however, clearly provides that, "[w]hen lighted, taillights shall emit a red light." See also State v. Redmond, 834 P.2d 516, 517 (Or.Ct.App.1992) (upholding investigatory stop of motorcyclist based in part on "blue-dot" taillight in violation of Or.Rev.Stat. § 816.080(2))