17 F.3d 395
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Herman PARRISH, Petitioner-Appellant,
v.
Midge CARROLL, Warden, Respondent,
and
A.A. Gomez, Warden, Respondent-Appellee.
 No. 90-56297.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 7, 1993.*
Decided Feb. 17, 1994.
 
 Before: FLETCHER, POOLE and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 California state prisoner Herman Parrish appeals the district court's denial of his first federal habeas corpus petition. Parrish argues his convictions are constitutionally flawed because: (1) the state trial court gave erroneous jury instructions; (2) the state trial court improperly admitted into evidence out of court statements he made to police; (3) the prosecutor improperly used peremptory challenges to exclude black persons from the jury; (4) his attorneys at trial and on direct appeal gave him ineffective assistance; and (5) there is insufficient evidence to sustain his conviction.
 
 
 3
 The district court had jurisdiction under 28 U.S.C. Sec. 2254. We issued a certificate of probable cause to permit Parrish to appeal. 28 U.S.C. Sec. 2253; Fed.R.App.P. 22(b). We have jurisdiction over this timely appeal under 28 U.S.C. Secs. 2253 and 2254. We reverse and direct that the writ be granted.[1]
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 4
 Ronald Colton's dead body was found near midnight on October 12, 1982 in the garage of a residence in Sylmar, California. Colton's death was caused by gunshot wounds to his head. One of his pants pockets was partially pulled out and his wallet was missing.
 
 
 5
 Parrish, Majit Jandu, and Kelly Morgan were arrested in November 1982 in connection with Colton's death and apparent robbery. When interrogated by the police, Parrish said that Morgan had asked him to go to the Sylmar residence, where Morgan planned to rob Colton, for the purpose of helping Morgan get away. Parrish also admitted to having been at the murder scene. The three men were charged with murder and robbery. They were tried separately.
 
 
 6
 At his trial, Parrish took the stand in his own defense. He confirmed being at the murder scene, but denied any involvement in the murder or robbery. Prints left by Parrish's left palm and right little finger were found on the door of the garage where the victim was found. Judith DeGraphereed, Morgan's girlfriend, testified Parrish told her he held the victim while Morgan shot him.
 
 
 7
 A jury convicted Parrish of first degree murder committed during the commission of a robbery, in violation of California Penal Code Sec. 187, and robbery, in violation of California Penal Code Sec. 211. Parrish was sentenced to state prison for twenty-five years to life for the murder, and the upper base term of five years for the robbery. The latter term was stayed pending completion of service of the sentence for murder, and stayed permanently thereafter.
 
 
 8
 In May 1986, the California Court of Appeal affirmed Parrish's conviction in an unpublished opinion. In August 1986, the California Supreme Court denied his petition for review. The California Supreme Court also denied, without citation to authority, Parrish's two state habeas petitions.
 
 
 9
 In September 1989, Parrish filed this petition for writ of habeas corpus in the United States District Court for the Central District of California. In September 1990, the district court, without a hearing, adopted the magistrate judge's findings and conclusions and denied Parrish's habeas petition. This appeal followed.
 
 DISCUSSION
 
 10
 We review de novo a district court's dismissal of a petition for habeas corpus. Zimmerlee v. Keeney, 831 F.2d 183, 185 (9th Cir.1987), cert. denied, 487 U.S. 1207 (1988). To the extent it is necessary to review district court findings of fact, the clearly erroneous standard applies. Thomas v. Brewer, 923 F.2d 1361, 1364 (9th Cir.1991).
 
 
 11
 State court factual conclusions are entitled to a presumption of correctness under 28 U.S.C. Sec. 2254(d) (1988). See Collazo v. Estelle, 940 F.2d 411, 415-16 (9th Cir.1991) (en banc), cert. denied, 112 S.Ct. 870 (1992). This presumption does not attach, however, to a state court's resolutions of mixed questions of fact and law. Hamilton v. Vasquez, 882 F.2d 1469, 1471 (9th Cir.1989).
 
 
 12
 Parrish maintains that the state trial court improperly admitted incriminating statements he made to police during custodial interrogation. He argues the police impermissibly continued questioning him after he unequivocally invoked his right to counsel, and the statements he made were involuntary within the meaning of the Fourteenth Amendment's Due Process Clause. We agree.
 
 1. Right to Counsel
 
 13
 "The fifth amendment's prohibition against compelled self-incrimination requires that before a custodial interrogation, a suspect must be advised that he has ... the right to the presence of an attorney." Miranda v. Arizona, 384 U.S. 436, 479 (1966); United States v. Fouche, 776 F.2d 1398, 1404 (9th Cir.1985) (Fouche I ). If the suspect at any time invokes his right to counsel, the interrogation must cease and may not resume unless a valid waiver is obtained subsequent to the suspect's initiation of further communication, exchanges, or conversations with the police or counsel is made available to him. Edwards v. Arizona, 451 U.S. 477, 484-85 (1981); Minnick v. Mississippi, 498 U.S. 146, 150 (1990).
 
 
 14
 "On occasion, an accused's asserted request for counsel may be ambiguous or equivocal."[2] Smith, 469 U.S. at 95. If a suspect's words, understood as ordinary people would understand them, do not clearly express his desire to deal with the police only through counsel, then further questioning must be limited to clarifying the suspect's intention. United States v. De La Jara, 973 F.2d 746, 750 (9th Cir.1992); Fouche I, 776 F.2d at 1404 ("[W]here a suspect makes an equivocal assertion of counsel, the police must cease all questioning, except that they may attempt to clarify the suspect's desire for counsel."). "Questions aimed at clarifying the desire for counsel must be strictly limited to that purpose; they may not be used to elicit incriminating information." Id. at 1405. If clarification reveals that the suspect does not want counsel, the interrogation may continue. Id. Whether the suspect's words constitute a request for counsel is a legal determination which we review de novo. United States v. Oba, 978 F.2d 1123, 1129 (9th Cir.1992); Robinson v. Borg, 918 F.2d 1387, 1390 (9th Cir.1990).
 
 
 15
 At the state court hearing on the motion to suppress Parrish's incriminating statements, Detective Kirk read from a transcript of Parrish's tape recorded police interview, and testified as follows:
 
 
 16
 Detective Wood stated, "You understand you have the right to remain silent. If you give up the right to remain silent, anything you say can and will be used against you in a court of law.
 
 
 17
 "You have the right to speak with an attorney and have an attorney present during questioning. If you so desire and cannot afford one, an attorney will be appointed for you without charge before questioning.
 
 
 18
 "Do you understand each of these rights I have explained to you?"
 
 
 19
 Excuse me--"I have just explained to you?"
 
 
 20
 The defendant Parrish answered, "Yes."
 
 
 21
 Detective Wood asked, "Do you wish to give up the right to remain silent?"
 
 
 22
 Mr. Parrish answered, "Yes. As far as I'm concerned, I have nothing to hide."
 
 
 23
 Detective Wood said, "Okay, good."
 
 
 24
 Again, Mr. Parrish stated, "I don't have anything to hide."
 
 
 25
 Detective Wood stated, "Okay, good," and questioned, "Do you wish to give up the right to have an attorney present during questioning?"
 
 
 26
 Mr. Parrish stated, "I would like to have me an attorney before, because I don't know what you all talking about on this."
 
 
 27
 Detective Wood stated something that was unintelligible on the tape, and then the words "coming from.
 
 
 28
 We're going to get into it. You can always--you don't have to talk to us. You can always stop anytime you want to start"--excuse me--"want to stop talking to us."
 
 
 29
 Then I stated, "What we would like to know is if you would talk to us right here and now without an attorney being here."
 
 
 30
 Mr. Parrish said, "Yeah, I know."
 
 
 31
 I stated, "That's up--"
 
 
 32
 And Mr. Parrish interrupted, "I know what you're saying."
 
 
 33
 I stated, "That's up to you. You don't have to."
 
 
 34
 Mr. Parrish stated, "Well, yes, I give that up."
 
 
 35
 4 R.T. 943-44.
 
 
 36
 Our independent review of the tapes reveals that Detective Wood, before reading Parrish his rights after a few ministerial questions moved into what appears to be substantive questioning:
 
 
 37
 Wood: A little curious about why you're here?
 
 
 38
 Parrish: They come telling me about a 187?
 
 
 39
 Wood: What's that to you?
 
 
 40
 Parrish: They told me it was murder.
 
 
 41
 (unintelligible side conversation between officers)
 
 
 42
 Wood: Well, that's what we're here for and that's what we want to talk to you about. All right?
 
 
 43
 Parrish: All right.
 
 
 44
 Wood: You want to talk about it?
 
 
 45
 (Pause)
 
 
 46
 Parrish: (slowly) I can talk to you about whatever you wanna talk about, but I don't know nothin' about no murder.
 
 Kirk: Okay
 
 47
 Wood: All right, we'll just talk about it and we'll get on with it.
 
 
 48
 Wood, then for the first time advises Parrish of his rights, and does so at a very rapid clip.
 
 
 49
 Wood: Do you understand each of the rights I just explained to you?
 
 
 50
 Parrish: Yes.
 
 
 51
 Wood: Do you wish to give up the right to remain silent?
 
 
 52
 (Pause)
 
 
 53
 Parrish: Yes. As far as I'm concerned ...
 
 
 54
 Wood: Okay, fine ...
 
 
 55
 Parrish: ... I don't have nothin' to hide.
 
 
 56
 Wood: ... okay. Good. Do you wish to give up the right to have an attorney present during questioning?
 
 
 57
 (Pause)
 
 
 58
 Parrish: I would like to have me an attorney for 'cause I don't know what y'all talkin' about on this.
 
 
 59
 (Pause)
 
 
 60
 Wood: Well, that's where I'm comin' from, the, um, we're gonna get into it. You can always ... you don't have to talk to us. You can always stop talkin' to us any time you wanna stop talkin' to us.
 
 
 61
 The issue is whether Parrish unequivocally invoked his right to counsel when he said, "I would like to have me an attorney before, because I don't know what you all talking about on this." The request is clear, simple, unequivocal. Rather than cease his questioning, as Wood should have, he pushes forward, and with the help of Detective Kirk, they succeed in getting Parrish to say that he waives his right to have an attorney present. This clearly violates the teaching of Edwards. "An accused, such as [Parrish], having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him[.]" 451 U.S. at 484-85. If the subject in custody "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." Miranda v. Arizona, 384 U.S. 436, 444-45 (1966). Parrish's request is not eloquent, but to police officers and judges familiar with the idiom of the streets, it is clear. This, of course, does not end the inquiry. We must determine whether the error can be excused as harmless. We conclude that it cannot.
 
 
 62
 Parrish was convicted of first-degree murder during the commission of a felony--robbery. The jury had to find that Parrish participated in the robbery in order to convict him of first-degree murder. Clearly that's what it found.
 
 
 63
 Without Parrish's statements to the officers during his interview, a reasonable jury could not have found him guilty beyond a reasonable doubt of participating in the robbery. There was other evidence to connect Parrish to the killing (fingerprints, testimony that he was at the scene of the crime, and his admission that he participated in the murder), but there was nothing other than his statements to the officers during his interview to establish that he participated in a robbery. Robbery is defined in California as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Cal.Penal Code Sec. 211.
 
 
 64
 The portion of Parrish's statements to the officers which implicates him in the robbery is his statement that he went with "Kelly" to the scene of the crimes for the purpose of helping Kelly make his getaway after he had robbed the victim. Without that, there is no evidence of his participation in the robbery.
 
 CONCLUSION
 
 65
 Because we find that Parrish's fifth amendment rights were violated and that his incriminating statements made to the police were erroneously admitted at trial we do not reach his other claims of trial error.
 
 
 66
 We direct that the writ be granted unless petitioner is retried within sixty (60) days or any reasonable extension of time permitted under state law.
 
 
 67
 REVERSED.
 
 DAVID R. THOMPSON, Circuit Judge, dissenting:
 
 68
 I respectfully dissent. In my view, Parrish's statement, "I would like to have me an attorney before, because I don't know what you all talking about on this," was an equivocal request for counsel. The officers' statements following this equivocal request were aimed at clarifying it, and thus Parrish's subsequent waiver of his Miranda right to counsel was valid.
 
 
 69
 An ordinary person would not understand Parrish's statement, "I would like to have me an attorney before, because I don't know what you all talking about on this," to clearly express a desire to deal with police only through counsel.[1] The statement reasonably could be interpreted as a request for clarification of the rights the officers were explaining to Parrish.
 
 
 70
 It is true that a suspect's "postrequest responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself." Smith, 469 U.S. at 100. However, the second part of Parrish's statement ("before, because I don't know what you all talking about on this") is "part of the request itself," id. at 96, not a distinct postrequest response. "On this" could refer to the crimes the police were asking Parrish about or it could refer to Parrish's constitutional rights. The statement in its entirety was ambiguous. It was an equivocal request for counsel which the police were entitled to clarify.
 
 
 71
 The question whether a police officer's statements, following an equivocal request for counsel, are truly aimed at clarifying the request or are simply part of further interrogation to elicit an incriminating response is a factual question which we review under a clearly erroneous standard. United States v. Fouche, 833 F.2d 1284, 1286 (9th Cir.1987) (Fouche II ), cert. denied, 486 U.S. 1017 (1988).
 
 
 72
 Here, the district court did not hold an evidentiary hearing, but the state court did. There is no contention that the state court hearing was less than full and fair. In my view, the state court's factual findings are entitled to a presumption of correctness under 28 U.S.C. Sec. 2254(d) (1988). See Collazo v. Estelle, 940 F.2d 411, 415-16 (9th Cir.1991) (en banc), cert. denied, 112 S.Ct. 870 (1992). There is nothing in this record, except the testimony which was presented before the state court, to dispel this presumption of correctness. The state court found that the police officers' statements following Parrish's equivocal request for counsel were fairly designed to clarify Parrish's rights.
 
 
 73
 I would hold that Parrish effectively waived his Miranda right to counsel. I would also hold that Parrish's remaining contentions lack merit, and therefore I would affirm the district court's denial of Parrish's petition for a writ of habeas corpus.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Parrish's motions contesting the time extension we granted respondent to file a responsive brief and the dismissal of oral argument in this case are denied
 
 
 [2]
 The Supreme Court has twice explicitly declined to rule on the permissible limits of interrogation following ambiguous or equivocal requests for counsel. See Connecticut v. Barrett, 479 U.S. 523, 529 n. 3 (1987); Smith v. Illinois, 469 U.S. 91, 96 n. 3 (1984)
 
 
 [1]
 The state trial court stated:
 I think that the statements of the officers, Officer Wood and Officer Kirk, were efforts to clarify the position that was presented by those words, "because I don't know what you're [sic] talking about on this."
 It could have been "on this," meaning on the constitutional rights that were being read to him, and it could have been--I would assume that, from reading on, that that's what it was, a clarification.
 
 
 [4]
 R.T. 963