24 F.3d 251
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 William Scott SMITH, Petitioner-Appellant,
v.
Manfred MAASS, Superintendent, Oregon State Penitentiary,
Respondent-Appellee.
 No. 93-35217.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 7, 1994.
Decided April 29, 1994.
 
 1
 Before: POOLE and TROTT, Circuit Judges, and KING,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 William Scott Smith, an Oregon state prisoner, appeals the district court's denial of his 28 U.S.C. Sec. 2254 habeas corpus petition. We affirm.
 
 
 4
 * Smith contends that the trial court should have suppressed his un-Mirandized confession to his father, mother, and fiancee.[1]
 
 
 5
 Miranda warnings were not required because Smith's conversations with his family were not "custodial interrogations." See Illinois v. Perkins, 496 U.S. 292, 297 (1990); Alexander v. Connecticut, 917 F.2d 747, 750-51 (2d Cir.1990), cert. denied, 111 S.Ct. 2831 (1991); cf. United States v. Eide, 875 F.2d 1429, 1433-34 (9th Cir.1989); Pace, 833 F.2d at 1313 & n. 14.
 
 
 6
 Moreover, Smith's relatives did not act as government agents. See United States v. Snowadzki, 723 F.2d 1427, 1429 (9th Cir.) (private citizen is government agent if (1) government knows of and acquiesces in the citizen's conduct, and (2) the citizen intended to assist law enforcement efforts rather than further his own ends), cert. denied, 469 U.S. 839 (1984). His mother had no contacts with the police before she visited Smith. The fiancee did not ask Smith about the murder; Smith volunteered his confession. The father encouraged Smith to confess, but he acted for personal reasons, not to assist the police.
 
 II
 
 7
 Smith contends that the state trial court improperly admitted a confession he made on April 24 because the police elicited the confession after he invoked his right to counsel on April 23.
 
 
 8
 If a suspect invokes his fifth amendment right to counsel during a custodial interrogation, the police must cease questioning the suspect and cannot resume questioning unless the suspect (1) "himself initiates further communication, exchanges, or conversation with the police" and (2) knowingly, intelligently, and voluntarily waives the right to counsel that he previously invoked. Smith v. Illinois, 469 U.S. 91, 95 (1984) (per curiam); Edwards v. Arizona, 451 U.S. 477, 484-86 & n. 9 (1981); Collazo v. Estelle, 940 F.2d 411, 415 (9th Cir.1991) (en banc), cert. denied, 112 S.Ct. 870 (1992).
 
 
 9
 The April 23 interrogation lasted about an hour. The police never administered Miranda warnings. Smith told the police that he didn't want to talk and stated that "[i]f you are going to charge me, arrest me and then you can get me an attorney." The police continued to interrogate him, they talked about his need for professional help, he cried, he asked to return to his cell several times, an officer slapped the table and asked him to confess again, he asked again to return to his cell, and the police returned him to his cell. Smith did not make any incriminating statements.
 
 
 10
 On April 24, more than 24 hours after the April 23 interrogation, Smith's father and stepmother visited Smith and asked him if he were guilty and told him that if he were, he needed psychiatric help. He asked to see his fiancee and mother, who were scheduled to visit that day. Smith confessed first to his fiancee and then to his mother. During his conversation with his mother, his father came into the room and persuaded him to confess to the police. The father came out of the room and told the police that Smith wanted to confess if the Vancouver burglary charges were dropped. The charges were dropped, the police read Smith his Miranda rights, and Smith waived them and confessed. He admitted he confessed because his father thought he should.
 
 
 11
 Smith's April 23 statements to the police were an equivocal request for counsel. See United States v. De La Jara, 973 F.2d 746, 750 (9th Cir.1992); Grooms v. Keeney, 826 F.2d 883, 886-87 (9th Cir.1987) (equivocal request when suspect answered "I don't know" in response to the question whether he wanted to consult an attorney); United States v. Fouche, 776 F.2d 1398, 1405 (9th Cir.1985) (equivocal request when suspect said he "might want to talk to a lawyer" and requested a phone call).
 
 
 12
 When a suspect makes an equivocal request for counsel, the police must cease questioning, except that they may clarify whether the suspect desires an attorney. Fouche, 776 F.2d at 1404. Interrogation may be resumed only if clarification reveals that the suspect does not want counsel. Id. at 1405.[2]
 
 
 13
 Here, the police violated Smith's rights by continuing to interrogate him on April 23. Collazo, 940 F.2d at 416-19.[3] The pertinent inquiry thus is whether Smith's subsequent reiniation of contact with the police and waiver of his right to counsel were voluntary. See Greenawalt v. Ricketts, 943 F.2d 1020, 1026-27 (9th Cir.1991) (a voluntary confession inadmissible on Edwards grounds does not taint a subsequent, voluntary confession), cert. denied, 113 S.Ct. 252 (1992); Collazo, 940 F.2d at 415-23 (voluntary means the "product of a free and deliberate choice rather than intimidation, coercion, or deception");[4] see also Oregon v. Elstad, 470 U.S. 298, 318 (1985); Smith, 469 U.S. at 95.
 
 
 14
 Smith argues that his decision to initiate contact and subsequent waiver of his right to counsel were not voluntary because they were coerced by promises of psychological help, use of his family to elicit an emotional confession, exploitation of his "borderline mental condition" and extensive police contact, including the April 23 interrogation, which was conducted in violation of Miranda.
 
 
 15
 We hold that under the totality of the circumstances, Smith's initiation of contact and waiver were voluntary.
 
 
 16
 First, the promises of psychological help did not render Smith's initiation of contact and waiver involuntary. The police mentioned psychological help during the April 23 interrogation more than 24 hours earlier, but this is not overwhelming coercion. Similarly, his father's concern with psychological help does not contribute to an air of police coercion. See Green v. Scully, 850 F.2d 894, 903-04 (2d Cir.), cert. denied, 488 U.S. 945 (1988); Martin v. Wainwright, 770 F.2d 918, 925-28 (11th Cir.1985), modified, 781 F.2d 185 (11th Cir.), cert. denied, 479 U.S. 909 (1986).
 
 
 17
 Second, the influence of Smith's family does not contribute to an atmosphere of coercion. Cf. United States v. Casal, 915 F.2d 1225, 1228-29 (8th Cir.1990), cert. denied, 499 U.S. 941 (1991). The police did help arrange family visits, but they only facilitated visits that the relatives requested. Moreover, Smith's discussions with his relatives were not akin to custodial interrogations and thus do not raise the Miranda and Edwards concerns that coercive police tactics raise.
 
 
 18
 Third, Smith argues that police exploited his borderline mental condition. Smith was of at least low average intelligence, however, and he testified that he was familiar with the criminal justice system and understood his rights. These facts dispel any concern that his waiver was involuntary. See Derrick v. Peterson, 924 F.2d 813, 816-17, 821 (9th Cir.1990) (valid waiver by sixteen year-old with I.Q. of 62-74 when police read him rights three or four times and defendant gave written waiver), cert. denied, 112 S.Ct. 161 (1991).
 
 
 19
 Finally, the police's continued interrogation of Smith on April 23 is troubling.[5] Any "minimally trained police officer should have known" that continued interrogation was impermissible and was likely to produce an improper confession. Cf. Collazo, 940 F.2d at 417. Nevertheless, the interrogation lasted a relatively short time, Smith did not make incriminating statements, more than 24 hours elapsed between the two interrogations, there was no police contact with Smith between the two interrogations, and Smith initiated police contact after striking a deal that the police drop the Vancouver robbery charge. Cf. id. at 416 (police told defendant after he requested counsel that if he asked for a lawyer, he could not talk to police and that it "might be worse" for him). Thus, any taint from the police's conduct was purged.
 
 
 20
 The question ultimately is whether Smith's initiation of contact with the police and subsequent Edwards waiver were the product of his free will rather than police coercion. See id. at 420. Under the totality of the circumstances, the police's involvement was not so pervasive that Smith's free will was overborne.
 
 III
 
 21
 Smith contends that even if his waiver of his Edwards right was voluntary, his subsequent confession was not voluntary.
 
 
 22
 "An inculpatory statement is voluntary only if it is the product of a rational intellect and a free will." United States v. Leon Guerrero, 847 F.2d 1363, 1365 (9th Cir.1988) (citing Blackburn v. Alabama, 361 U.S. 199, 208 (1960)). The test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement such that the suspect's will was overborne. Id. (citing Haynes v. Washington, 373 U.S. 503, 513-14 (1963)); see Colorado v. Connelly, 479 U.S. 157, 170 (1986) (police coercion must be causally related to confession).
 
 
 23
 In support of his claim that his confession was involuntary, Smith proffers the same facts that he used to support his Edwards claim. He also argues that involuntariness is shown by continued offers of psychological help during the interrogation. The additional promises of psychological help do not establish coercion such that, under the totality of the circumstances, Smith's will was overborne.
 
 
 24
 AFFIRMED.
 
 
 
 *
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Smith also raises a sixth amendment challenge to his confession, but his sixth amendment right to counsel had not attached. See United States v. Pace, 833 F.2d 1307, 1310-12 (9th Cir.1987), cert. denied, 486 U.S. 1011 (1988)
 
 
 [2]
 The Supreme Court has granted certiorari in an equivocal counsel case and presumably will decide what procedure is constitutionally required. See United States v. Davis, 36 M.J. 337 (C.M.A.), cert. granted, 114 S.Ct. 379 (1993)
 The state argues that habeas relief is not appropriate because the procedure that this court requires for equivocal requests was not announced until Fouche, which was decided after Smith's conviction became final. Moreover, the state argues, Smith met with his attorney after the April 23 interrogation, and until the Supreme Court decided Minnick v. Mississippi, 498 U.S. 146 (1990), it was arguable whether this meeting lifted the Edwards bar to further interrogation. The state concludes that Fouche and Minnick are "new rules" that should not be applied retroactively to invalidate Smith's conviction. The state did not raise this defense below, however, and we conclude that the interests of comity and justice are not served by considering it for the first time on appeal. See Collins v. Youngblood, 497 U.S. 37, 40-41 (1990); Boardman v. Estelle, 957 F.2d 1523, 1534-37 (9th Cir.), cert. denied, 113 S.Ct. 297 (1992).
 
 
 [3]
 The state concedes that the officers should have advised Smith of his Miranda rights before interrogating him
 
 
 [4]
 Smith does not argue that he did not understand the nature of the right he waived at the April 24 interrogation. See Collazo, 940 F.2d at 415 (discussing "awareness" prong of inquiry)
 
 
 [5]
 Other police contact with Smith, which was part of an investigation of the prime suspect in a murder case, was not extraordinary and does not suggest an unduly coercive atmosphere